UNITED STATES, Appellee,

v.

Michael SPOSITO, Defendant—Appellant.

No. 95–1755.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1996.

Decided Feb. 18, 1997.

Seth M. Kalberg, Boston, MA, by appointment of the Court, for defendant–appellant.

Cynthia A. Young, Attorney, U.S. Department of Justice, with whom Donald K. Stern, United States Attorney, Ernest S. DiNisco and James D. Herbert, Assistant United States Attorneys, Boston, MA, were on brief for appellee.

Before TORRUELLA, Chief Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

TORRUELLA, Chief Judge.

Defendant-appellant Michael Sposito was convicted of illegal gambling and aiding and abetting illegal gambling in violation of 18 U.S.C. § 1955. He now appeals the district court's denial of his motion to dismiss for violation of the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161–3167, and the district court's admission into evidence of the prior immunized testimony of Louis Padova under the residual exception to the hearsay rule.

## I. *The Speedy Trial Act*

### A. Standard of Review

■ In reviewing an STA ruling, we examine factual questions under a clear error

standard and legal determinations *de novo*. See *United States v. Rodriguez*, 63 F.3d 1159, 1162 (1st Cir.), *cert. denied*, ⸺ U.S. ⸺, 116 S.Ct. 681, 133 L.Ed.2d 529 (1995).

### B. The Legal Framework

■ At issue is 18 U.S.C. §§ 3161 *et seq.*, which require that:

> the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whatever date last occurs.

18 U.S.C. § 3161(c)(1); *see also Henderson v. United States*, 476 U.S. 321, 322, 106 S.Ct. 1871, 1872–73, 90 L.Ed.2d 299 (1986). If the defendant is not brought to trial within the seventy day time period, "the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2); *see Rodriguez*, 63 F.3d at 1162. Not every day between the indictment or appearance and the start of trial is counted, however. Section 3161(h) provides a list of circumstances in which the STA is tolled.

The question before us, therefore, is whether seventy countable days passed between the indictment of Sposito on April 13, 1994, and the start of the trial on January 17, 1995. There are several periods of time in dispute, but we need only consider the last of these—from December 1, 1994 to January 13, 1995.[1] Defendant states that 41 countable days passed prior to December 1, 1994. Because we find that there were no countable days from December 1, 1994 to January 13, 1995, defendant's claim under the STA must fail, regardless of how we would rule on the earlier periods.

On November 30, 1994, the previously scheduled trial date of December 12 was postponed indefinitely. At that time, the government's motion in limine to restrict the cross-examination of certain law enforcement

---

1. Although the trial started on January 17, the parties agree that the filing of the January 13 motion to dismiss for violation of the STA tolled the STA clock.

witnesses, filed on November 8, was pending. The motion in limine was eventually heard during the trial, with argument on the motion taking place on January 31, 1995. We must decide whether the motion in limine tolled the STA clock from November 8 to January 13.

Three principal sources of authority frame our decision. First, there is the statute, which requires that "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" be excluded from the time counted against the STA. 18 U.S.C. § 3161(h)(1)(F). Congress chose not to include any explicit exceptions in the statutory language. Yet Congress was conscious of the possible need for more flexible exclusion requirements, as demonstrated by other parts of the statute. For example, in section 3161(h)(8)(A), the Act excludes periods of delay resulting from a continuance, but only when the trial court sets forth, in the record, its reasons for finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

Second, in *Henderson v. United States,* 476 U.S. 321, 327, 106 S.Ct. 1871, 1875, 90 L.Ed.2d 299 (1986), the Supreme Court held that "Congress intended subsection (F) to exclude from the Speedy Trial Act's 70–day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" *Id.* In *Henderson,* a motion to suppress was filed on November 3, 1980, and a hearing was held on March 25, 1981, at which the trial court "declined to reach a final decision because it needed further information. The court did not receive all filings in connection with the motion until December 15, 1981." *Id.* at 332, 106 S.Ct. at 1877–78 (citations

omitted). The Court excluded all of this time under section 3161(h)(8)(F). *Id.*

Finally, we are bound by our own ruling in *United States v. Rojo–Alvarez,* 944 F.2d 959 (1st Cir.1991). In *Rojo–Alvarez,* the government filed a motion in limine on March 8, 1990. On April 5, 1990, the district court reserved ruling on the merits of the motion until trial. On appeal, this court stated that:

> [w]e do not believe that a court should put off consideration of a motion and exclude the time during which the motion lies dormant. However, when the court is presented with papers styled as a motion, whether it ultimately determines that the filing is a pretrial motion or an 'other proceeding' under (J), the court is entitled to exclude at least the period of time during which it considers how to treat the filing.

*Id.* at 966. The court in *Rojo–Alvarez* disposed of the case by excluding the time between the filing of the motion and the date upon which it was reserved. The panel's language regarding the time a motion lies dormant did not affect the outcome of the case.[2]

In the instant case, the government filed its motion in limine on November 8, 1994. As an initial matter, motions in limine are "pretrial motions" for the purposes of section 3161(h)(1)(F), implying that the filing of such a motion tolls the STA clock. *See id.; see also United States v. Santoyo,* 890 F.2d 726, 728 (5th Cir.1989); *United States v. Johnson,* 32 F.3d 304, 306 (7th Cir.1994). The motion was not heard until January 31, 1995, well after the start of trial. Between the filing of the motion and the trial date, the court made no mention of the motion in limine. Specifically, it did not, at any time, state that it considered the motion "dormant."

Defendant-appellant contends that the district court implicitly relegated the motion to dormant status when it postponed the trial

---

**2.** *Cf. United States v. Clymer,* 25 F.3d 824, 829–30 (9th Cir.1994) (finding that time after the district court explicitly postponed ruling on the relevant motion until after the trial must be counted against the STA clock); *United States v. Gambino,* 59 F.3d 353, 357–59 (2d Cir.1995) (ruling that the STA clock is "not tolled when the postponement of a pretrial motion until after trial does not effect a trial court's ability to proceed"), *cert. denied,* —— U.S. ——, 116 S.Ct. 1671, 134 L.Ed.2d 776 (1996). *But see United States v. Riley,* 991 F.2d 120, 123 (4th Cir.1993) (ruling that when a hearing on a pretrial motion is deferred until after trial, all of the time from the filing of the motion until its disposition is excluded).

indefinitely. He argues that "[u]pon the issuance by the Court on November 30 of the Notice cancelling the December 12 trial date without the setting of a new trial date, and because of that Notice, it was then apparent that the Court's other business and or convenience had put the Sposito case on hold." Appellant's Brief at 25. Appellant then appeals to *Rojo–Alvarez* for the proposition that time during which motions lie dormant is to be counted against the STA clock.

We disagree with appellant's claim. In our view, the motion was never relegated to dormant status for STA purposes. The order postponing the trial read, in its entirety, "[t]he trial scheduled to begin December 12, 1994 has been canceled. It will be rescheduled for a future date to be advised." District Court Order of Cancellation, November 30, 1994. No reason was given for the postponement and there was no suggestion that the motion in limine had been reserved until trial.[3]

■ To find that the motion was dormant, therefore, we would have to rely on speculative inferences about the statements and actions of the lower court. We decline to do so. We are unwilling to adopt the position that appellate courts should sit in review of the day-to-day operation of district courts in order to determine when a district court's decision to put off consideration of a motion makes that motion "dormant" and when it does not. District courts are busy and must constantly make scheduling decisions with respect to the many matters for which they are responsible. We are ill equipped to second guess these decisions. There is no reliable way for an appellate court to divine the intent of the district court with respect to a particular motion or its docket in general. Rather than open the door to appeals that ask this court to read the tea leaves of a trial's scheduling orders, we will only look to the explicit statements of the lower court.

Our ruling today is also based on our interpretation of the STA and *Henderson*. On the one hand, neither of these sources suggests that dormant motions fail to trigger excludable time under subsection (F). On the other hand, we recognize that there may be sound policy reasons for an exception to subsection (F) in the case of dormant motions. Because the statute does not itself create such an exception, however, and because *Henderson* held that even unreasonable delays shall be excluded, any exception for dormant motions should at the very least be drawn narrowly. We do not believe that an exception for motions *deemed*, by an appellate court, to have been dormant, without any explicit indication to that effect by the district court, would be consistent with the strong language of the STA and *Henderson*.

Furthermore, from the point of view of an appellate court, there does not appear to be a principled distinction between a motion that is dormant and one for which the period of delay prior to hearing is unreasonable. In other words, finding a motion to have been dormant without any language to that effect in the record will often be similar to concluding that there has been unreasonable delay. *Henderson* has established that all delay, even if unreasonable, is excluded. To count time against the STA clock on the ground that the motion was implicitly relegated to dormant status, therefore, would be contrary to the spirit of *Henderson*.

We hasten to add that this opinion should not be taken either to criticize or to support the language in *Rojo–Alvarez* concerning dormant motions. *See Rojo–Alvarez*, 944 F.2d at 966. Our holding only extends to the question of whether or not the district court reserved ruling on the motion or otherwise relegated the motion to dormant status. We do not comment in any way on the implications, for Speedy Trial Act purposes, of an explicit ruling that a motion is dormant or that the court will reserve ruling on the motion.

---

3. Appellant also points to the district court's remarks, made on the first day of trial, in which the court referred to the motion in limine, stating, "I have been planning to have a hearing on that in connection with the trial.... I think holding the motion to resolve once I have found that there was not going to be a plea, and apparently there won't be, is consistent with [*Henderson*]." However one may interpret these remarks, they do not amount to an explicit relegation of the motion in limine to dormant status.

As a result of our ruling, the 43 days from December 1 to January 13 are not counted for STA purposes. In light of the fact that appellant claims only 41 days were counted against the STA clock prior to December 1994, our finding implies that we must *affirm* the district court's ruling on the STA issue.

## II. *The Admission of Evidence Claim*

Defendant-appellant next alleges that the district court erred in admitting into evidence the prior testimony of Louis Padova. Padova had testified in October 1992, under a compulsion and immunity order, at the trial of Arthur Marder, who was accused of illegal gambling. At Marder's trial, Padova testified that Marder had told him that he was paying everyone—the implication being that Marder paid off local Revere politicians in order to protect his illegal video poker business. It was alleged that these payments were made via Sposito.

At Sposito's trial, Padova refused to testify, even with immunity, and was found in contempt. The government moved to admit Padova's testimony from the prior Marder trial. The district court found Padova to be unavailable within the meaning of Federal Rule of Evidence 804(a)(2) and found the previous testimony to be admissible under Federal Rule of Evidence 804(b)(5). Appellant contests the Rule 804(b)(5) ruling. ·

■ The proper interpretation of the Federal Rules of Evidence is a question of law and is reviewed *de novo, see Texaco Puerto Rico v. Department of Consumer Affairs,* 60 F.3d 867, 874–75 (1st Cir.1995); *Hathaway v. Coughlin,* 99 F.3d 550, 555 (2d Cir.1996); *United States v. Medina–Estrada,* 81 F.3d 981, 986 (10th Cir.1996), but the application of Rule 804(b)(5) is reviewed under an abuse-of-discretion standard. *See Cook v. United States,* 904 F.2d 107, 111 (1st Cir.1990).

■ In ruling on the question, the district court found "that the testimony relates to a material fact whether Arthur Marder was indeed paying off politicians to obtain protection for his video poker machine business in

Revere. If that fact is proven, it increases the likelihood that he was paying off those politicians through Mr. Sposito." 2/7 Tr. 15. The court also found that "the testimony of Padova is more probative on the point of what Arthur Marder said to Padova than any other testimony the Government can procure." 2/7 Tr. 16.

Rule 804(b)(5) requires that:

(A) the statement is offered as evidence of a material fact;

(B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed.R.Evid. 804(b)(5)(A), (B), (C).[4] Reading the first two subparagraphs together, defendant argues, requires that (B) be read as if it included the words "of material fact" after the word "point." Thus, the defendant alleges that the district court erred by not directing its inquiry to the "question of whether Marder's statement to Padova was more probative on the issue of whether Marder was paying off politicians than any other available testimony." Appellant's Brief at 35.

Before proceeding, we note that defendant's argument rests on the assumption that the question of what Marder said to Padova is not a material fact. If it is a material fact, Padova's testimony would be admissible, even under defendant's preferred interpretation of the rule. To conclude, as defendant does, that the question of whether Marder was paying politicians is material fact and yet the fact that he stated as much to Padova is not a material fact is an ·exceedingly fine distinction, and not one upon which the question of admissibility should turn.

The relationship between subparagraphs (A) and (B) of Rule 804(b)(5) appears to be a matter of first impression within the circuit. We begin, as always, with an examination of the plain language of the rule. Subsection

---

**4.** In addition to these requirements, the statement must also have "equivalent guarantees of trustworthiness." Fed.R.Evid. 804(b)(5).

(B) requires only that the statement be more probative on "the point for which it is offered." The subparagraph does not include the words "of material fact" as advocated by defendant. The drafters of Rule 804(b)(5) separated the "material fact" element of the test found in subparagraph (A) from the "more probative" element of subparagraph (B). Were the rule intended to have the meaning advocated by defendant, it could have been written with much greater clarity. Had the drafters wanted to include the words "of material fact" following the word "point" in subparagraph (B) they obviously could have done so. Furthermore, by doing so, they would have eliminated the need for subparagraph (A) because the necessity of a material fact would be explicit in the revised subparagraph (B). As written, however, the plain language of the rule does not require that the issue on which the statement is most probative be a material fact; it requires only that it be probative on the point "for which it is offered." Fed.R.Evid. 804(b)(5)(B).

Furthermore, subparagraph (A) requires only that the statement be offered as *evidence* of a material fact. It need not itself be a material fact. If we were to import language from subparagraph (A) to subparagraph (B), it would be more natural to add the words "of evidence" after the word "point," such that (B) read, "the statement is more probative on the point *of evidence* for which it is offered than any other evidence." Under this interpretation, appellant's claim would fail. The district court established that the statement was offered as evidence of the fact that Marder was paying off politicians and that the latter was a point of material fact. The statement is more probative on that point of evidence—what Marder told Padova—than any other evidence that the government could procure through reasonable efforts.

Defendant, perhaps recognizing that the language of the rule is not favorable to his argument, turns to legislative history. He points to language in the Senate Report to the effect that the residual hearsay exception should be used rarely. S.Rep. No. 1277, 93d Cong., 2nd Sess. (1974), U.S.Code Cong. & Admin.News 1974, p.7051. Our own exami-nation of the legislative history, however, reveals that the inclusion of the residual hearsay exception was intended for cases, such as the one before us, that "have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the [other Rule 804(b) ] exceptions, and to have a high degree of prolativeness [sic]." *Id.*

In order to illustrate the type of evidence that the Senate Committee felt should be admitted but that may not fall within one of the other hearsay exceptions, the Senate Report cited *Dallas County v. Commercial Union Assurance Company,* 286 F.2d 388 (5th Cir.1961). S.Rep. No. 1277. At issue in that case was the cause of the collapse of the Dallas County Courtroom clock tower. Insurance investigators believed that it collapsed due to structural defects. Dallas County believed that the tower collapsed as a result of being struck by a bolt of lightning. In support of its position, the County introduced into evidence, among other things, charcoal and charred timbers found in the tower debris. *Id.* at 390. In order to rebut this evidence, the insurers sought to introduce a newspaper article from 1901 describing a fire that had occurred in the courtroom in that year. The court admitted the evidence despite the fact that it was not characterized "as a 'business record', nor as an 'ancient document', nor as any other readily identifiable and happily tagged species of hearsay exception." *Id.* at 398.

The Senate Report stated that "[b]ecause exceptional cases like the *Dallas County* case may arise in the future, the committee has decided to reinstate a residual exception for rules 803 and 804(b)." S.Rep. No. 1277, U.S.Code Cong. & Admin.News 1974, p.7066.

Under defendant's construction of the residual hearsay exception, however, the newspaper article in *Dallas County* would not be admissible. The newspaper article was introduced as evidence of the material fact that the charred timbers were the result of a fire that took place more than fifty years prior to the case. The newspaper story did not, however, go directly to the question of why the charred timbers were in the tower, it only went to the fact that there had been a fire in 1901. The story was not more probative on

the point of why the timbers were charred than any other evidence. It was, however, more probative than any other evidence that the insurers could provide on the question of whether there had been a fire.

Just as in the case at bar, therefore, a requirement that the statement be more probative on the point of material fact than other available evidence would exclude the evidence in question. This is certainly not what the Senate Committee, which used the *Dallas County* case as an example of evidence that was correctly admitted, intended.

Finally, we turn to the policies served by the residual hearsay exception. These can be summarized as follows:

1. To provide sufficient flexibility to permit the courts to deal with new and unanticipated situations.
2. To preserve the integrity of the specifically enumerated exceptions.
3. To facilitate the basic purpose of the Federal Rules of Evidence: truth ascertainment and fair adjudication of controversies.

11 Moore's Federal Practice § 803(24)[7] (2d ed. 1994 & Supp.1996–97). It is our view that these objectives are best served by rejecting defendant's proposed construction of 804(b)(5). The defendant's proposed interpretation would needlessly reduce the flexibility available to courts dealing with new and unanticipated situations. By excluding evidence that has, as required by 804(b)(5), "equivalent circumstantial guarantees of trustworthiness," defendant's proposed interpretation would also make truth ascertainment and the fair adjudication of justice unnecessarily difficult.

For the above reasons, we decline to adopt the defendant's reading of subparagraphs (A) and (B), and we conclude that the district court did not err, as a matter of law, in its interpretation of Rule 804(b)(5)(B).

■ We examine the district court's application of the rule. Defendant-appellant claims that the admission of Padova's testimony was erroneous because the district court failed to analyze each part of the testimony in order to determine each part's reliability. In support of his claim, defendant cites *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), in which the Supreme Court ruled that, for the purposes of Rule 804(b)(3), which governs statements against interest, the word "statement" refers to a single remark. "The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession." *Williamson*, 512 U.S. at 601, 114 S.Ct. at 2435. Defendant would have us apply the same definition of "statement" to Rule 804(b)(5) and, under such a definition, he argues that the district court failed to analyze each part of the testimony.

■ We note initially that defendant failed to raise this issue at trial. Arguments raised for the first time on appeal are forfeited and reversible only upon a demonstration of "plain error." *United States v. Sullivan*, 98 F.3d 686, 687 (1st Cir.1996). "Under this standard, an appellant bears the burden of establishing: (1) 'error,' *i.e.*, a '[d]eviation from a legal rule'; (2) that the error is 'plain' or 'obvious'; and (3) that the plain error affected 'substantial rights.' " *United States v. Winter*, 70 F.3d 655 (1st Cir.1995) (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993)), *cert. denied*, —— U.S. ——, 116 S.Ct. 1366, 134 L.Ed.2d 532 (1996); Fed.R.Crim. Proc. 52(b).

This circuit has not yet determined whether the definition of "statement" adopted for Rule 804(b)(3) in *Williamson* also applies to Rule 804(b)(5).[5] We need not make this determination in the instant case, because defendant's claim fails regardless. If *Williamson*'s definition of "statement" does not apply, defendant's claim is without merit because we find no plain error in the district court's review of the testimony as a whole— viewing it as a single statement—and its determination that the requirements of Rule 804(b)(5) were satisfied. The district court

---

**5.** *But see United States v. Canan*, 48 F.3d 954, 960 (6th Cir.1995) ("[T]he term 'statement' must mean 'a single declaration or remark' for purposes of all of the hearsay rules."), *cert. denied*, —— U.S. ——, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996).

concluded that the testimony included adequate guarantees of trustworthiness because it was given under oath, because Padova was immunized, because he testified upon personal knowledge, and because he was vigorously cross-examined by defense counsel in the Marder trial.[6] These indicia of reliability are sufficient to establish that the district court's conclusion that the testimony was reliable was not plain error. The district court also found subparagraphs (A) through (C) satisfied, and we find no plain error in its analysis.[7]

If *Williamson* applies, our analysis becomes more complicated. The district court does not appear to have engaged in a sentence-by-sentence analysis of the testimony, as would be required by *Williamson.* The indicators of reliability that the district court used, however, are not specific to any portion of the testimony and would apply to every statement therein, implying that there is no error with respect to the reliability of the testimony. Specifically, the district court stated that "Mr. Padova testified at the Marder trial under oath, he was immunized and, therefore, had an incentive to tell the truth in order to avoid prosecution for perjury. He testified based upon personal knowledge." The judge also noted that "he was vigorously cross-examined by Mr. Duggan, the defense counsel." Tr. 2/7 14–15.

Had the trial court conducted a sentence-by-sentence analysis, therefore, it would have applied these same criteria to every sentence and would have concluded that each one had sufficient indicators of reliability. There was, therefore, no plain error in the assessment of the reliability of the testimony.

With respect to subparagraphs (A)–(C) of Rule 804(b)(5), however, not every sentence of the testimony is admissible. For example,

not every sentence in that testimony can be said to have been offered as evidence of a material fact. For this reason, assuming, *arguendo,* that *Williamson* applies, the district court's ruling was erroneous. The error was not, however, "plain," as required by *Winter.* In order to be considered plain, the error must be "so 'plain' that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). The error in this case was not sufficiently clear as to rise to the level of a plain error. The error, if it existed at all, turns on the interpretation and application of *Williamson* to a case dealing with a hearsay exception that was not implicated in *Williamson.* No cases are on point in this circuit, and the issue was not raised at trial.

Furthermore, even if we concluded that there was plain error, the defendant still must show that the error affected "substantial rights." In order to affect substantial rights, the error "must have affected the outcome of the district court proceedings." *Olano,* 507 U.S. at 734, 113 S.Ct. at 1778. The analysis is the same as a "harmless error" analysis, except that "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* Defendant in the instant case has failed to demonstrate that the error affected the outcome of the proceedings. Indeed, defendant-appellant's brief pursues only a harmful error argument and concludes that "Padova's testimony ... very well *could have* tipped the scales." Appellant's Brief at 44 (emphasis added). Even if we were to agree with this assertion, it is not enough, under the plain error standard, that the error *could have* changed the outcome. We

---

6. Defendant accurately points out that testifying under immunity is not always considered an indicator of truthfulness. *See, e.g., United States v. Zannino,* 895 F.2d 1, 7 (1st Cir.1990). It is not for us, however, to conduct a plenary review of the district court's determination regarding the reliability of the testimony or to review every factor considered by the district court. The fact that the trial judge felt immunity bolstered the credibility of the testimony does not amount to plain error.

7. Appellant alleges that the district court examined only a small part of Padova's testimony and improperly admitted the remainder of the testimony. We find no support for this claim in the record. The transcripts of the proceedings indicate that the district court considered the testimony as a whole in order to determine whether the requirements of Rule 804(b)(5) were met. Tr. 2/7 13–16.

can find plain error only if the error *must have* done so.

Finally, we address defendant's claim that Sposito's counsel would have undertaken a more vigorous and extensive cross-examination of Padova than did Marder's counsel. We do not dispute that it would have been better to have Padova testify and be subject to cross-examination. Given that he was not available, a fact defendant does not dispute, the question is whether his previous testimony should have been admitted. This matter goes to the question of whether there were sufficient guarantees of trustworthiness. As we have already discussed, defendant has failed to persuade this court that the district court's conclusion that such guarantees existed was plain error.

### III. Conclusion

For the foregoing reasons, we *affirm* the district court's rulings on the STA claim and the evidence claim.