**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-1811 & 19-2574
_____

UNITED STATES OF AMERICA

v.

NAKIA ADAMS, a/k/a S, a/k/a Shawn
                                            Appellant
_____

On Appeal from the District Court for the
Eastern District of Pennsylvania
(D.C. No. 5:15-cr-00580-001)
District Judge:  Hon. Jeffrey L. Schmehl
_____

Argued September 8, 2021

Before: KRAUSE, RESTREPO and BIBAS, *Circuit Judges*

(Opinion Filed: May 26, 2022)

Salvatore C. Adamo          **[ARGUED]**
1866 Leithsville Road – No. 306
Hellertown, PA 18055

*Counsel for Appellant*

Robert A. Zauzmer
Eric A. Boden        **[ARGUED]**
Eric B. Henson
Office of United States Attorney
615 Chestnut Street – Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee*

_____

OPINION OF THE COURT

_____

KRAUSE, *Circuit Judge.*

With the passage of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, Congress codified a defendant's right either to be tried within seventy days of arraignment or indictment or to have all charges dismissed. But it also sought to ensure that the speedy trial was a fair one, so it excluded from the running of the so-called "speedy trial clock" certain periods of delay. Three are at issue in this appeal where Nakia Adams was not tried until nearly two years after his arraignment and now contends that his conviction must be vacated on Speedy Trial Act grounds.

Adams argues that an open-ended continuance granted by the District Court did not meet the Act's criteria for tolling under § 3161(h)(7)(A), that the motions *in limine* filed by the Government did not qualify for the Act's exclusion of "delay resulting from any pretrial motion" under § 3161(h)(1)(D), and

2

that his motion for discovery did not toll the clock under § 3161(h)(1)(D) from its filing through its official disposition. Because we conclude those periods of delay were excluded, we reject Adams's claim that he was tried in violation of the Speedy Trial Act. And because we also reject Adams's second claim—that the District Court plainly erred in failing to instruct the jury on the "knowledge-of-status" element under *Rehaif v. United States*, 139 S. Ct. 2191 (2021)—we will affirm the District Court as to all counts of conviction.

## I.     Background

Following a jury trial in October 2017, Nakia Adams was convicted on twenty counts of a superseding indictment, including eight for felon-in-possession of a firearm under 18 U.S.C. § 922(g)(1) and twelve for making false statements to federally licensed firearms dealers under 18 U.S.C. § 924(a)(1)(A). These charges arose out of a straw-purchaser scheme, which Adams devised to illegally acquire firearms that he then sold or traded for drugs in Newark, New Jersey. Being himself a convicted felon, Adams was prohibited from legally possessing firearms; instead, he recruited individuals with clean criminal records to serve as his straw purchasers.

The scheme ground to a halt after Adams was arraigned on his original indictment on December 16, 2015.[1] Trial was

---

[1] The original indictment included twelve counts: one for conspiracy under 18 U.S.C. § 371, seven for making false statements to federal firearms licensees under 18 U.S.C. § 924(a)(1)(A), and four for felon in possession of a firearm

3

initially scheduled for February 16, 2016, but it was rescheduled for May 16 after Adams moved for a continuance on February 4. The record from that point on is fraught with what the District Court later characterized as "numerous continuances [and] unnecessary motions," caused by Adams's "obstreperous behavior." J.A. 29. The District Court judge handled these continuances and motions with commendable professionalism, but they nonetheless resulted in more than a year of delay. We focus on three sources of that delay central to this appeal.

First is a continuance that the District Court sought to enter on May 25. Adams filed two *pro se* motions on April 4 and April 25, respectively. One was to replace his defense counsel, and the other was for unspecified discovery materials. Those motions prompted the District Court to strike the May 16, trial date and to schedule a hearing on them for May 25. At the hearing, however, it became apparent that the motions' resolution would not be straightforward. Adams explained that his discovery motion was motivated, in part, by his desire to personally review discovery materials, so the Court directed the parties to negotiate a stipulated protective order to accommodate Adams's request without compromising sensitive cooperator information.

The Court also addressed Adams's motion for new counsel, explaining to him that changing attorneys several months into the case would "delay [his] trial" because the Court would need to find and appoint a "new attorney" and

under 18 U.S.C. § 922(g)(1). The grand jury returned a superseding indictment on February 2, 2016.

give Adams time to "meet with that . . . attorney." J.A. 133. On more than one occasion, Adams acknowledged he "underst[ood]" that a new appointment would "delay [] trial," but he made clear he wished nonetheless to substitute counsel. *Id.* The hearing concluded with the Court's statement that it would "appoint counsel, and then schedule a future status hearing . . . and possibly pick a trial date at that point in time." J.A. 146. Notably, the judge did not set a particular date for that future hearing or for trial. He also did not cite 18 U.S.C. § 3161(h)(7)(A), which allows district courts to pause the speedy trial clock by entering a continuance, or state that this continuance would serve the "ends of justice."

The May 25 hearing was not the last word on Adams's discovery motion, which is the next source of delay that concerns us. Following the hearing, the Government and Adams's new counsel, who entered the case on June 1, negotiated a stipulated protective order that outlined the materials Adams was entitled to review personally. That order was entered on June 21,[2] but over the next few weeks, Adams's counsel became concerned it was potentially ambiguous. Thus, at a subsequent hearing on July 11, he suggested that the parties "present another order for the Court, just so it's clear to everyone which documents [counsel was] permitted to give [Adams]." J.A. 152. The Court agreed and entered a clarifying order on July 20. On August 18, the Court denied Adams's discovery motion on the ground that "he was (and still is)

---

[2] The record is ambiguous on whether this protective order was entered on June 20 or June 21. The parties agree that the order was entered on June 21, and we have accordingly settled on that date.

5

represented by counsel, and therefore, not entitled to file motions *pro se*." Supp. App. 3.

The final delay that looms large here resulted from two motions *in limine* filed by the Government on August 17, 2016: a Rule 404(b) motion to introduce evidence at trial concerning Adams's straw purchases and heroin trafficking; and a Rule 609(a) motion to introduce one of his prior felony convictions, should Adams choose to testify. The District Court issued an order directing Adams to respond to those motions no later than September 28 and held argument on November 7. At the end of argument, however, the Court opted against "making a ruling" at that time, stating that "motions *in limine*[] are issues that continue almost up until the point of trial." J.A. 189.

At this point, trial was scheduled for November 30. Before trial could commence, however, Adams requested to proceed *pro se*, prompting the District Court to reschedule trial for June 12, 2017, to allow Adams to move forward without counsel. And trial did begin on that date. But again, it did not go smoothly and was cut short due to Adams's conflict with his attorney. A new trial commenced several months later.

The jury returned a guilty verdict on all twenty counts of the superseding indictment on October 17, 2017. And the evidence supporting those convictions was substantial. Evidence of the scheme included testimony from five straw purchasers, who described how Adams inquired into their criminal records, only recruited buyers without prior convictions, and typically compensated them with drugs. They explained how, once recruited, they bought guns at Adams's direction at various federally licensed firearm dealers, and before each transaction, were required to fill out forms issued

6

by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). According to these witnesses, Adams directed them to lie on the forms by attesting that they were the guns' true purchasers and coached them on how to respond to each question, including one confirming that they had no prior felony convictions. He also advised them that they would be subject to criminal background checks for the purchases made in Pennsylvania, which comprised the majority.

Regarding proof of the § 922(g) felon-in-possession charges, Adams entered a so-called *Old Chief* stipulation, confirming the existence of his prior felony conviction, *see Old Chief v. United States*, 519 U.S. 172 (1997), and the judge ultimately instructed the jurors on the elements of a § 922(g) offense as they were understood at the time, including (1) "that the defendant has been convicted of a felony," (2) "that after this conviction the defendant knowingly possessed a firearm," which merely required "the government [to] prove that the defendant possessed the firearm in question," and (3) that the firearm was "in or affected interstate or foreign commerce." J.A. 1217–20.

On two occasions in the lead up to his conviction, Adams argued that he had not been brought to trial within the time required by the Speedy Trial Act. On November 16, 2016, he moved to dismiss the superseding indictment, claiming that his rights under the Act had been violated because his former counsel had moved for the February 4, 2016, continuance without his knowledge. The District Court denied that motion because the continuance was valid, regardless of whether Adams knew that his attorney had asked for it. In his second motion to dismiss, Adams again alleged a Speedy Trial Act

7

violation but did not offer specific arguments in support of his claim. That motion was likewise denied on October 17, 2017.

Upon conviction, Adams again raised this argument in his motion for acquittal or alternatively for a new trial. The District Court denied this motion on January 16, 2019, and said it would not "allow Mr. Adams to use the Speedy Trial Act as a shield for his obstreperous behavior," citing his "numerous continuances, unnecessary motions, and representation by three different attorneys," as well as the "numerous delays" resulting from Adams "attempt[ing] to proceed pro se" after repeatedly firing his appointed counsel. J.A. 29–30. Because it viewed "all delays [as] directly attributable to Mr. Adams," the District Court concluded there had been no violation of his right to a speedy trial, and the case proceeded to sentencing.[3] *Id*. at 29.

At his sentencing hearing, Adams raised a different argument: that he was entitled to a new trial on the felon-in-possession counts in light of *Rehaif v. United States*, 139 S.

---

[3] The District Court seems to have improperly analyzed Adams's motion as an alleged violation of his constitutional speedy trial rights, rather than his rights under the Speedy Trial Act. J.A. 29. As a result, the Court did not count the days that had elapsed between Adams's arraignment and his second trial and did not consider how much of that time could be excluded under the Act's enumerated exceptions. Instead, it applied the four-part balancing framework outlined in *Barker v. Wingo*, 407 U.S. 514 (1972), which considers (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. J.A. 29–31.

Ct. 2191 (2019). The Supreme Court had held in that case that 18 U.S.C. § 924(a)(2)'s requirement that a defendant "*knowingly* violate" § 922(g)(1) demanded proof that the felon had knowledge of the possession of a firearm, but also of his status as a felon. *Id.* at 2194, 2200. It clarified, in other words, that the mens rea for the offense requires "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200.

Before *Rehaif*, we and other Courts of Appeals had believed this knowledge element was limited to the knowing possession of a firearm, *see United States v. Higdon*, 638 F.3d 233, 239–40 (3d Cir. 2011), and the District Court's jury instructions reflected as much.[4] Adams did not object to those instructions at trial, but, at sentencing, he argued that the District Court's failure to instruct the jury on the "knowledge-of-status" element required that his § 922(g)(1) convictions be vacated. The District Court disagreed, entered final judgment of conviction, and sentenced Adams to 235 months' imprisonment, followed by three years of supervised release. This appeal followed.

## II.    Jurisdiction & Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231 because Adams was charged in an indictment alleging

---

[4] The eight felon-in-possession counts in the superseding indictment likewise alleged only that Adams "knowingly possessed" firearms.

9

violations of federal criminal law. We have appellate jurisdiction under 28 U.S.C. § 1291.

As a general matter, we review a district court's legal determinations *de novo*, its factual findings for clear error, and its decisions to grant continuances for abuse of discretion. *United States v. Shulick*, 18 F.4th 91, 100 (3d Cir. 2021). When a legal question was not preserved at trial, however, we review the district court's ruling for plain error. *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021).

## III. Discussion

Adams raises two claims on appeal. He first asks that we vacate his conviction in its entirety on the ground that he was not brought to trial within the time required under the Speedy Trial Act. In the alternative, he argues that, because the District Court's failure to instruct the jury on the "knowledge-of-status" element constituted plain error under *Rehaif*, he is entitled to a new trial at least on the § 922(g)(1) counts. For the reasons set forth below, neither argument is persuasive.

### A. The Speedy Trial Act Claim

Under the Speedy Trial Act, a defendant must be brought to trial within seventy days of the date of the indictment or the date on which the defendant first appeared in the court where the charges are pending, whichever is later. 18 U.S.C. § 3161(c)(1). The indictment "shall be dismissed," if the defendant is not tried within that time frame. 18 U.S.C. § 3162(a)(2). Strict as that rule is, it is tempered by enumerated exceptions, including two that are relevant here. First, a district

10

court may grant a continuance and toll the speedy trial clock by making a finding, on the record, that the "ends of justice" served by granting a continuance "outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7).  Second, if a party files a "pretrial motion," the speedy trial clock is tolled for the "delay resulting from" that motion from the time of its filing until "the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D).

In this case, the speedy trial clock commenced with Adams's arraignment on December 16, 2015 because he did "not appear before a judicial officer prior to his original indictment, [so] his arraignment . . . constituted his initial appearance for Speedy Trial Act purposes."  *United States v. Willaman*, 437 F.3d 354, 357 (3d Cir. 2006); *see also United States v. Reese*, 917 F.3d 177, 181 (3d Cir. 2019).  The parties agree that forty-five days had elapsed on the clock as of February 4, 2016, and Adams does not dispute the exclusion of all days after September 28, 2016, once he filed responses to the Government's motions *in limine*.  This appeal therefore centers on the 236-day period between February 4 and September 28.

Certain days during that period were indisputably excluded, but if twenty-five days ran between those dates, then those days, combined with the prior forty-five, would exceed the seventy-day statutory cap.  On the other hand, if sufficient days were excluded by one or more of the motions filed and continuances granted during that period, Adams's Speedy Trial

11

Act claim must fail.[5]  Only three need concern us today, as the speedy trial clock could not have expired if the District Court properly entered an ends-of-justice continuance on May 25, 2016 or if the clock was tolled by a combination of Adams's April 25, 2016, discovery motion and the Government's August 17, 2016, motions *in limine*.  We address each below.

### 1.  Ends-of-Justice Continuance

The Speedy Trial Act permits a district court to pause the speedy trial clock during "[a]ny period of delay resulting from [the granting of] a continuance," but only if the court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the *ends of justice* served by the granting of [a] continuance outweigh the best interests of the public and the defendant in a speedy trial."  18 U.S.C.

---

[5] There is no dispute that one day elapsed on December 17, 2015, when no pretrial motions or continuances were outstanding, as did another forty-four between December 22, 2015 and February 4, 2016.  In addition to the motions and continuances that we address in detail, the clock was tolled from December 18 through December 21 by Adams's pending motion to extend time to file pretrial motions, by an open-ended continuance entered by the District Court on February 8, 2016, and by Adams's motion to remove his defense counsel on April 4, 2016.  The parties dispute when the February 8 continuance expired, but we need not resolve that question, as the number of days at issue is immaterial.  They agree that the April 4 motion to remove his counsel tolled the clock until June 1, when the Court resolved the issue by appointing replacement counsel.

§ 3161(h)(7)(A) (emphasis added). The District Court sought to enter an open-ended continuance during a hearing on May 25, 2016, in which it considered Adams's April 4 motion for new counsel and his April 25 discovery motion.

Adams argues that the Court could not have entered a valid continuance without either citing the relevant statutory provision or invoking the words "ends of justice." This argument fails because our precedent affords district courts significant leeway in complying with § 3161(h)(7)(A)'s procedural requirements.[6] It is true that, if a District Court enters a "continuance order [that] cites the relevant provision of the [Speedy Trial] Act" or "states that it is for the 'ends of justice,'" it streamlines our analysis: in that circumstance, the court need not provide factual justifications for the continuance at the time it is entered but can instead "supplement[] the record with further details" on why a continuance serves the "ends of justice" at a later date. *Reese*, 917 F.3d at 182 (citing *United States v. Brooks*, 697 F.2d 517, 521–22 (3d Cir. 1982)). But it is also true that a district court may enter a continuance without citing the Act or referencing the ends of justice "so long as the court explains a valid factual basis for the continuance on the record" and in a manner that shows the

---

[6] The Supreme Court "has not elaborated on the timing, procedures, or substantive standards that must be satisfied for a district court" to enter a continuance, *Reese*, 917 F.3d at 182, apart from requiring factual findings to be entered "by the time [the court] rules on the defendant's motion to dismiss," *Zedner v. United States*, 547 U.S. 489, 507 (2006). We have therefore found it necessary to fill in the gaps through our case law. *See Reese*, 917 F.3d at 182.

court "balanced the interests of the public and of all of the defendants." *Id.* (citing and quoting *United States v. Rivera Constr. Co.*, 863 F.2d 293, 297 (3d. Cir. 1988)). What a district court cannot do is exclude time through a continuance "without *either* stating the factual basis" for doing so *or* "using language that invokes" the statute. *Id.* (citing *United States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989)) (emphasis added).

During the May 25 hearing, the District Court resolved to appoint Adams a new attorney and asked the parties to enter a stipulated protective order, outlining which discovery materials Adams was entitled to review. Having struck the outstanding trial date, the Court then explained that:

> I'm going to appoint counsel, and then schedule a future status hearing, so that we can all get together and [] Mr. Adams [] and his counsel can tell us what they've done so far, what they need to do, what they want to schedule in the future, and possibly pick a trial date at that point in time . . . . Because there still are, as I see it, some outstanding discovery issues.

J.A. 146.

While the District Court did not cite the statute or use the "magic words," statements on the record make clear that it had a "valid factual basis for the continuance" and that it balanced the relevant interests.[7] *Reese*, 917 F.3d at 182. In

---

[7] To ensure compliance and avoid putting convictions in jeopardy, some judges in the Eastern District of Pennsylvania have employed a form of order that excludes

14

considering Adams's *pro se* motion for new counsel, the Court found that there had been an "attorney[-]client breakdown," J.A. 132, and that Adams could not mount a proper defense without new representation. It recognized that new counsel would be involved in resolving outstanding discovery issues and explicitly warned Adams that, if he moved forward with his request to change attorneys, "delay[ing] [his] trial" would be unavoidable because the Court would need to find and appoint a "new attorney" and give Adams time to "meet with that [] attorney." J.A. 133. In response, Adams repeatedly acknowledged that changing his representation would cause a delay and that he nonetheless was requesting new counsel. That colloquy reflects that the District Court delayed trial to protect Adams's Sixth Amendment right to counsel, which is a

---

time on the basis of ends-of-justice continuances. *See*, *e.g.*, Order, *United States v. Myers*, No. 20-cr-210, ECF 85 (E.D. Pa. Jan. 31, 2022); Order, *United States v. Brown*, No. 20-cr-013, ECF 45 (E.D. Pa. Oct. 19, 2021); Order, *United States v. Salerno*, No. 20-cr-320, ECF 28 (E.D. Pa. July 21, 2021); Order, *United States v. Woodley*, No. 15-cr-340, ECF 12 (E.D. Pa. Oct. 7, 2015); Order, *United States v. Vargas*, No. 14-cr-652, ECF 71 (E.D. Pa. May 11, 2015); *United States v. O'Brien*, No. 15-cr-021, ECF 42 (E.D. Pa. Mar. 25, 2015); *United States v. Broaster*, No. 12-cr-533, ECF 95 (E.D. Pa. Jan. 29, 2013); Order, *United States v. Sampson*, No. 09-cr-250, ECF 15 (E.D. Pa. July 6, 2009); see *also Sample Order Granting Motion for Continuance*, Federal Judicial Center (July 27, 2021), available at https://fjc.dcn/sites/default/files/session/2019/Order%20Grant ing%20Motion%20for%20Continuance_0.pdf. Doing so avoids unnecessary ambiguity and needless litigation.

15

particularly weighty justification for a continuance,[8] *see Gideon v. Wainwright*, 372 U.S. 335, 343 (1963) ("the assistance of counsel" in criminal trials has long been recognized as "one of the safeguards . . . necessary to insure [sic] fundamental human rights of life and liberty" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462 (1938))), and that, after balancing that right against Adams's (and the public's) interest in a speedy trial, the Court concluded that delaying trial was warranted under those circumstances.

This record is sufficient to meet the requirements of 18 U.S.C. § 3161(h)(7)(A) and therefore to toll the speedy trial clock from May 25 to November 30, *i.e.*, the new date that the District Court set for trial. *See Reese*, 917 F.3d at 182; *Rivera Constr. Co.*, 863 F.2d at 297.[9] And, with this continuance in

---

[8] Protecting defendants' Sixth Amendment right to counsel is an especially compelling reason to delay trial, but similarly weighty interests may justify lengthy continuances in future cases.

[9] Though not disputed by the parties, we note that the District Court's decision not to specify an end date for this continuance poses no issue under our precedents. Open-ended continuances that otherwise comply with § 3161(h)(7)(A) are valid if they are not "unreasonably long" in light of the "particular circumstances of th[e] case," including which party bears primary responsibility for delaying trial. *United States v. Lattany*, 982 F.2d 866, 881–82 (3d Cir. 1992). Here, the continuance expired on November 30, 2016, that is, the new trial date set by the Court. This roughly six-month delay was not "unreasonably long," given the nature of the *pro se* motions

16

effect, twenty-five non-excludable days could not have elapsed between February 4, 2016 and September 28, 2016.  This provides one basis to deny Adams's Speedy Trial Act claim, but there is another, equally valid ground on which to do so. We therefore turn to our alternative holding.

## 2.  Pretrial Motions

Adams's Speedy Trial Act claim must be denied for a second, independent reason: the days excluded as a result of his April 25, 2016, *pro se* discovery motion in combination with the Government's August 17, 2016, motions *in limine*. *See United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 440 (3d Cir. 1982) (explaining that "an alternate holding has the same force as a single holding; it is binding precedent").

Section 3161(h)(1)(D) of the Speedy Trial Act provides that the clock is tolled from the filing of "any pretrial motion" until the "conclusion of the hearing on, or other prompt disposition of, [that] motion."  This subsection excludes time in two circumstances: (1) "when a pretrial motion requires a hearing" and (2) when the motion "result[s] in a 'prompt disposition.'" *Henderson v. United States*, 476 U.S. 321, 329 (1986).  The concept of "prompt disposition" in turn is

---

for discovery and new counsel and the fact that Adams, in filing the motions, was largely responsible for postponing trial. *Id.* at 882 (holding that an open-ended continuance of over a year was not unreasonable because it was made necessary by considerable turnover in the defendant's legal team, for which the defendant bore significant responsibility).

17

bounded by § 3161(h)(1)(H),[10] "which permits an exclusion of [no more than] 30 days from the time a motion is actually 'under advisement' by the court." *Id*.

What this means in practice is that, if the district court chooses to resolve the motion without holding a hearing, the clock starts ticking a maximum of thirty days after it has "receive[d] all the papers it reasonably expects" from the parties. *Id*. Alternatively, if the court determines a hearing is warranted to allow for additional evidence or argument before taking a motion under advisement, the Speedy Trial Act "exclude[s] all time between the filing of and the hearing on a motion whether that hearing was prompt or not." *Id.* at 326; *see also Lattany*, 982 F.2d at 874 ("Subsection (h)(1)[(D)] does not impose a reasonableness limitation on delay due to pretrial motions."). In addition, because it would be illogical "to exclude . . . all the time prior to the hearing . . . but not the time during which the court remains unable to rule because it is awaiting the submission by counsel of additional materials," the clock remains tolled up to thirty days beyond the court's receipt of any post-hearing submissions that are needed to "proper[ly] dispos[e] of the motion." *Henderson*, 476 U.S. at 331–32 (allowing for the exclusion of thirty days "for the District Court to take [a motion] under advisement" once the

_____

[10] *Henderson* preceded amendments to the Speedy Trial Act in 2008, so its statutory references correspond to an earlier version of the Act. The provision excluding time for the "delay resulting from any pretrial motion" was previously codified at § 3161(h)(1)(F), while the subsection that excludes up to thirty days while a motion is "under advisement" was previously codified at § 3161(h)(1)(J).

18

Court received post-hearing supplementary filings); *accord United States v. Graves*, 722 F.3d 544, 548 n.6 (3d. Cir. 2013).

Here, Adams claims that the District Court resolved his discovery motion on June 21, when it entered a protective order to facilitate his personal review of discovery materials, rather than on August 18, when it entered an order denying the motion. According to Adams, that protective order fully satisfied his request to review discovery materials himself and left nothing for the District Court to resolve.

The record shows otherwise. Adams's *pro se* discovery motion related not only to his desire for personal access to discovery, but also to his dissatisfaction with counsel and his request for "evidence not otherwise known to him" that could "disprov[e] his guilt, reduc[e] his punishment, or [be used to] impeach[] witnesses," *i.e.*, *Brady* material. *Pro Se* Motion for Discovery, *United States v. Adams*, No. 15-cr-580, ECF 26 (E.D. Pa. Apr. 25, 2016). True, by June 21, the District Court had entered a stipulated protective order concerning the discovery materials. But that did not resolve the personal access issue, let alone Adams's request for *Brady* material. Instead, due to new counsel's concerns about ambiguities in the protective order, the District Court was required to provide further clarification in a second order entered on July 20.

It was only at that point, with Adams's demonstrated willingness to proceed with newly appointed counsel and to forego *pro se* status, and with the terms of his personal access to discovery resolved to all parties' satisfaction, that the District Court had the information it needed to take the rest of the motion "under advisement." And it did so promptly, ruling on August 18 that "[Adams] was (and still is) represented by

counsel, and therefore, not entitled to file motions *pro se*." Supp. App. 3.  As such, all time between the motion's filing date and the August 18 ruling was excluded from the speedy trial clock.  *See Henderson*, 476 U.S. at 331.

The other motions with which Adams takes issue are the Government's August 17, 2016, motions *in limine*, which he contends do not qualify as true "pretrial motions" within the meaning of § 3161(h)(1)(D).  Our sister circuits are split concerning the speedy trial implications of motions *in limine*. The D.C. Circuit in *United States v. Van Smith* observed that motions *in limine* typically pertain to the admissibility of evidence at trial, so treating them as "pretrial motions," *i.e.*, excluding time from whenever the motion *in limine* is filed through its resolution, could "circumvent the [] Act" altogether because the Government could theoretically file such motions "at an early stage" simply to stop the clock indefinitely.  530 F.3d 967, 971 (D.C. Cir. 2008).  To avoid that risk and because motions *in limine* often do not "require the attention of the [] court" until at or immediately before trial, the court concluded they were better construed as notices of the Government's intent to submit evidence to the jury that do not toll the clock at all.  *Id.*[11]

---

[11] *See also United States v. Taplet*, 776 F.3d 875, 878 (D.C. Cir. 2015) ("Not all motions filed pretrial count as a 'pretrial motion' under the [Speedy Trial Act]," including "government evidentiary filings that invoke Federal Rules of Evidence 404(b) and 609[.]"); *United States v. Harris*, 491 F.3d 440, 444 (D.C. Cir. 2007) (holding that the government's evidentiary notice "was not a motion" within the meaning of § 3161(h)(1)(D), but the defendant's response

20

By contrast, several circuits have held that, because this tolling provision applies to "*any* pretrial motion," § 3161(h)(1)(D) (emphasis added), it necessarily covers evidentiary motions, regardless of whether they are held in abeyance until trial. *See*, *e.g.*, *United States v. Franklin*, 148 F.3d 451, 456 (5th Cir. 1998) (holding that the "government's motions seeking evidentiary rulings" tolled the speedy trial clock, even though their resolution was "deferred by the court until trial" and they did not "consume the court's attention" in the intervening time); *United States v. Bloate*, 655 F.3d 750, 753 (8th Cir. 2011) (holding that the speedy trial clock was tolled by the government's motions *in limine* even though the district court disposed of both motions on the first day of trial).[12]

The First Circuit has taken a more nuanced approach, holding that whether motions *in limine* toll the clock depends on how the district court approaches them in a given case. In that circuit, a district court cannot "put off consideration of a[n] [evidentiary] motion *and* exclude the time during which the motion lies dormant," but it "is entitled to exclude at least the

---

to that motion tolled the clock because it required the trial court's attention).

[12] *See also United States v. Johnson*, 32 F.3d 304, 306 (7th Cir. 1994) (holding that "the seventeen days the court expended in deciding the government's motion *in limine* [] were excludable"); *United States v. Riley*, 991 F.2d 120, 123 (4th Cir.1993) (excluding all time from the filing of a pretrial evidentiary motion until its disposition, even though the hearing on that motion was deferred until after trial).

21

period of time during which it considers [whether] to treat the filing" as either a pretrial motion, which would fall under § 3161(h)(1)(D), or an evidentiary notice, which would not. *United States v. Rojo-Alvarez*, 944 F.2d 959, 966 (1st Cir. 1991); *see also United States v. Sposito*, 106 F.3d 1042, 1045 (1st Cir. 1997) (holding that the Government's motion *in limine* tolled the speedy trial clock from its filing through its official disposition at trial because "there was no suggestion that the motion [] had been reserved until trial" or that it had been "relegated to dormant status for [Speedy Trial Act] purposes"). But importantly, absent a clear indication that the motion has been "reserved until trial," the motion will be treated as a "pretrial motion" under the Act, excluding time consistent with § 3161(h)(1)(D). *Sposito*, 106 F.3d at 1045.

Similarly, the Second and Ninth Circuits, respectively, have declined to exclude time where "a trial judge postpon[es] an evidentiary hearing" on the defendant's motion "until the conclusion of the case in chief," *United States v. Gambino*, 59 F.3d 353, 359 (2d Cir. 1995), or "put[s] off [a motion *in limine*'s] hearing . . . until after trial," *United States v. Springer*, 51 F.3d 861, 865 (9th Cir. 1995).[13] Under this

---

[13] While the Ninth Circuit has limited this tolling exception to cases in which a "motion [*in limine*] is decided after trial" and not when it is decided "after the jury ha[s] been impaneled but before the presentation of evidence," *see United States v. George*, 85 F.3d 1433, 1436 (9th Cir. 1996), we do not agree with that distinction. The Speedy Trial Act requires trial to "commence within seventy days" of the filing of an indictment or the defendant's first appearance in court. 18 U.S.C. § 3161(c)(1). Thus, the speedy trial clock stops

approach, if the trial judge simply "table[s]" an evidentiary motion for resolution at or after trial, time is not automatically excluded from the speedy trial clock, which should only "be tolled when the expenditure of judicial resources to decide the motion would interfere with the case expeditiously proceeding to trial." *Gambino*, 59 F.3d at 359.

In our circuit, the treatment of motions *in limine* has remained an open question until today.[14] *See United States v. Williams*, 917 F.3d 195, 200 n.3 (3d Cir. 2019) (declining to reach the disputed issue of "whether the Motion In Limine [was] a 'pretrial motion' that stop[ped] the seventy-day clock pursuant to 18 U.S.C. § 3161(h)(1)(D)").

---

running when the defendant's trial begins, and a district court's decision to table a motion *in limine* for resolution after trial has the same speedy trial implications as reserving judgment until the start of trial.

[14] In *Lattany*, we held that "[t]he district court properly excluded [] time" under the Speedy Trial Act for a variety of pretrial motions, including the Government's motion *in limine*, 982 F.2d at 872–74, but the specific question of if and when motions *in limine* should be construed as evidentiary notices versus "pretrial motions" under § 3161(h)(1)(D) was not squarely presented. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 185 (3d Cir. 2007) (explaining that a statement of law in a prior case was "dicta" because the earlier court had "not [been] presented with the [relevant] question," such that the statement "could have been deleted without seriously impairing the analytical foundations of the holding" (internal quotation marks omitted)).

23

We now conclude, drawing on the approaches taken in the First, Second, and Ninth Circuits, that it is necessary to distinguish between motions *in limine* that the district court actively seeks to resolve pretrial and those it decides expressly, or by routine practice, to hold until trial. We do so primarily because this distinction comports with the plain language of the Act, which excludes time only for the "delay *resulting from* any pretrial motion." 18 U.S.C. § 3161(h)(1)(D). As that phrasing indicates, the purpose of this subsection is "to exclude all time that is consumed in placing the trial court in a position to dispose of a motion." *Henderson*, 476 U.S. at 331. Many motions *in limine* do require the court's disposition pretrial, *e.g.*, to confirm the admissibility or inadmissibility of evidence bearing on witness preparation or trial strategy. But where a court has no intention of resolving a motion *in limine* before trial, that motion cannot be said to "consum[e]" the court's time pretrial, *id.*, or to "result[]" in any pretrial delay, § 3161(h)(1)(D). Put differently, although § 3161(h)(1)(D) indeed covers "any" pretrial motion, its text and context make clear that a "pretrial motion" for these purposes is not simply a motion that is filed chronologically before trial; it is a motion that requires the court's time to resolve pretrial and thereby delays the commencement of trial by a commensurate number of excludable days. *See* § 3161(h)(1)(D); *see also Henderson*, 476 U.S. at 330–32.

At the same time, we share our sister circuits' concern that "[t]here is no reliable way . . . to divine the intent of the district court with respect to a particular motion or its docket in general," and we will not rely on mere speculation to "determine when a district court's decision to put off consideration of a motion" means the motion has been tabled until trial. *Sposito*, 106 F.3d at 1045. We therefore hold that a

24

motion *in limine* is treated as would be any "pretrial motion" under § 3161(h)(1)(D) except when a district court clearly indicates that it is reserving judgment until trial, whether by stating as much or by following a regular practice of postponing decisions on motions *in limine* for trial. In sum, as a general matter, "motions *in limine* are 'pretrial motions' for the purpose of [§] 3161(h)(1)[(D)]," *Sposito*, 106 F.3d at 1044, and, unless the district court tables their resolution until trial, they toll the speedy trial clock accordingly. *See Gambino*, 59 F.3d at 359; *Rojo-Alvarez*, 944 F.2d at 966.

Here, the Government filed two motions *in limine*: its Rule 404(b) motion to admit evidence concerning Adams's distribution of heroin, his straw purchases, and his prior conviction for drug trafficking; and its Rule 609(a) motion for permission to impeach Adams with his prior convictions should he testify at trial. Initially, the District Court actively considered those motions, ordering Adams to respond to the Government's "outstanding motions *in limine* no later than September 28, 2016," and scheduling a hearing for November 7, 2016. So, up to that point, no days ran on the speedy trial clock. But at the November 7 hearing, the Court announced it was reserving judgment because "motions *in limine* are issues that continue almost up until the point of trial." J.A. 189. Thus, any pretrial delay after November 7 was not "resulting from" those motions, § 3161(h)(1)(D), and could not be excluded from the speedy trial clock on that basis.

At issue on appeal, however, are only the days between February 4 and September 28, and for the reasons we have explained, the combination of Adams's motion for discovery and the Government's motions *in limine* prevents Adams from accumulating twenty-five non-excludable days during that

25

period.  Accordingly, Adams cannot establish a violation of his rights under the Speedy Trial Act, and on this independent and alternate basis, we will affirm the District Court's denial of that claim.  *See Zelinsky*, 689 F.2d at 440.

## B.  The *Rehaif* Claim

In the event all counts are not dismissed on Speedy Trial Act grounds, Adams urges us to vacate at least his felon-in-possession convictions based on the Court's failure to instruct the jury consistent with *Rehaif*, 139 S. Ct. 2191 (2019). Because he did not object to the omission of "knowledge of status" as an element at trial, we review for plain error.[15] Adams must meet "three threshold requirements": (1) there was an error; (2) that error was plain; and (3) it affected his "substantial rights."  *Greer*, 141 S. Ct. at 2096 (quoting

---

[15] Adams's related argument that the omission of the "knowledge-of-status" element from the indictment and jury instructions was structural error, requiring automatic reversal, is foreclosed by our precedent and that of the Supreme Court, which do not count *Rehaif* errors among the "highly exceptional" constitutional errors considered structural. *Greer v. United States*, 141 S. Ct. 2090, 2099–100 (2021) (failure to charge "knowledge of one's felon status" or to instruct the jury on that element does not require automatic vacatur of a conviction because those errors do not "affect the entire framework within which the proceeding occurs."); *United States v. Boyd*, 999 F.3d 171, 178–79 (3d Cir. 2021) ("[F]ailing to include [the knowledge-of-status] element in the jury instruction was not a structural error that requires automatic reversal.").

*Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018)). And even then, we may exercise our discretion to grant relief only if "the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id.* at 2096–97 (internal quotation marks omitted); *see also United States v. Olano*, 507 U.S. 725, 734–36 (1993).

The parties have appropriately focused their arguments on the third prong: whether the *Rehaif* error in the District Court's jury instructions affected Adams's "substantial rights."[16] As the Supreme Court explained in *Greer*, the relevant question is whether "there is a 'reasonable probability' that [Adams] would have been acquitted" had "the District Court . . . correctly instructed the jury on the *mens rea* element of [his] felon-in-possession offense[s]." *Greer*, 141 S. Ct. at 2097 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). As to that question, the Court cautioned that defendants face "an uphill climb" because "[i]f a person is a felon, he ordinarily knows he is a felon." *Id.* at 2097.

*Greer*, in effect, created a presumption that the "knowledge-of-status" element is satisfied whenever a § 922(g)(1) defendant is, in fact, a felon. To overcome that presumption, the defendant must make a "sufficient argument . . . on appeal that he would have presented evidence at trial that he did not in fact know he was a felon," and the appellate

---

[16] In this case, the first two prongs are easily satisfied. The District Court's failure to instruct the jury on § 922(g)'s "knowledge-of-status" element was erroneous, and that error was plain after *Rehaif*. *See Johnson v. United States*, 520 U.S. 461, 468 (1997) ("[I]t is enough that an error be 'plain' at the time of appellate consideration.").

court "must [then] determine whether the defendant has carried the burden of showing a 'reasonable probability' that the outcome of the district court proceeding would have been different" if the jury had been properly instructed after hearing that evidence. *Id.* at 2100. In making that determination, the appellate court is not bound to consider only what the government offered in evidence at the trial but can examine "the entire record," including the defendant's pre-sentence report. *Id.* at 2097–99.

In light of *Greer*, Adams cannot establish plain error. The presumption of knowledge applies to Adams because, at the time he organized his straw-purchaser scheme, he had been convicted of four felonies in three separate prosecutions, and, at trial, he entered an *Old Chief* stipulation, acknowledging those prior convictions. *See id.* at 2098. On the trial record before us, he cannot overcome that presumption.

Adams's primary argument is that he is akin to the hypothetical defendant in *Rehaif* who might not know he is a felon because he was convicted of an offense "punishable by imprisonment for a term exceeding one year" but "sentenced only to probation." 139 S. Ct. at 2198 (internal quotation marks and alterations omitted). Because he never served more than 364 days in custody for any of his prior convictions, he contends that he similarly lacked "knowledge of status." Adams, however, was not sentenced to probation; rather, he was charged and convicted on, not one, but four felonies and was sentenced to nearly a year in prison for one of them. With that history, it strains credulity that Adams did not know he was a felon. In any event, the Supreme Court's far-flung hypothetical in *Rehaif* is not enough, without more, to

28

surmount the "uphill climb" necessary to overturn his felon-in-possession convictions. *Greer*, 141 S. Ct. at 2097.

Unfortunately for Adams, what "more" there is only cuts the other way. The trial record makes clear that Adams devised his straw-purchaser scheme precisely because he knew he was a felon who could not lawfully possess firearms. And straw purchasers described how he vetted them for their clean criminal records, coached them on how to answer each question on the ATF forms (including one regarding prior felony convictions), and explained that they would be subject to criminal background checks. *See, e.g.*, J.A. 418, 517, 613, 653–54, 725, 876. In short, while the Supreme Court acknowledged that "there may be cases in which a defendant who is a felon can make an adequate showing on appeal . . . that he did not in fact know he was a felon when he possessed firearms," *Greer*, 141 S. Ct. at 2097, this is not such a case.

Because Adams has failed to show there is a "'reasonable probability' that he would have been acquitted" if the jury had been properly instructed, *id*, his *Rehaif* claim fails on plain error review.

## IV.    Conclusion

For the foregoing reasons, we will affirm the District Court's judgment entering conviction on all twenty counts of the superseding indictment.