Sheila G. **COOK**, Plaintiff, Appellee,

v.

**UNITED STATES of America,**
Defendant, Appellant.

No. 89–1672.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1990.

Decided May 22, 1990.

Michael J. Roach, Attorney, Tax Div., Dept. of Justice, Washington, D.C., with whom Shirley D. Peterson, Asst. Atty. Gen., and Wayne A. Budd, U.S. Atty., Boston, Mass., were on brief, for defendant, appellant.

John H. Henn, with whom Christopher J. Lord, Foley, Hoag & Eliot, Boston, Mass., and Bernard Wolfman, Cambridge, Mass., were on brief, for plaintiff, appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

TORRUELLA, Circuit Judge.

█ The United States appeals from summary judgment granted by the United States District Court for the District of Massachusetts. The issue before us is whether, for capital gains tax purposes, a transfer of real properties and stocks pursuant to a divorce decree in 1976 was in "discharge of a marital obligation" or was a "non-taxable event," for the transferee spouse under *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962).[1]

## I. FACTS AND TRAVEL OF THE CASE

Pursuant to their May 12, 1976 Connecticut divorce decree, Charles Cook transferred to Sheila Gamble Cook 8,995 shares of Procter & Gamble stock along with three properties in Sorrento, Maine.[2] One half of the stock transferred had originally belonged to Sheila and she had gifted it to Charles, 15 to 20 years before the divorce. The other half was given to him by her relatives. As for the two Maine properties at issue, one was purchased from a person outside the Gamble family and the other was purchased from Sheila's father. Both of the properties were purchased at fair market value 10 to 15 years before the divorce.[3]

Sheila Cook sold her interest in two of the properties in 1976. She sold 4,595 of the shares of stock between 1977 and 1978. She reported these sales on her tax returns using as a tax basis the fair market value of the properties and the stock on the date of the transfer, that is, the date of the divorce decree. In 1984, the Internal Revenue Service (IRS) asserted deficiencies in Sheila Cook's tax returns for the years 1976–1978 of $166,974. These alleged deficiencies were calculated using a "carryover" basis. The IRS claimed that Sheila Cook should have carried over Charles Cook's original basis in the property because the transfer to her was a non-taxable division of property. Sheila Cook paid the alleged deficiencies. She also paid interest to the tune of $153,286.43.

In April 1985, Sheila Cook filed and the IRS received amended income tax returns for the years 1976 through 1978 requesting refunds. The IRS did not respond to her claims. Sheila then brought suit in district court for a refund of all amounts paid, plus interest and costs, pursuant to 26 U.S.C. § 6532(a)(1) and § 7422. The district court found in favor of Sheila Cook and entered judgment on May 2, 1989. The government now appeals.

## II. DISCUSSION

*United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), governs the taxability of these transfers. That case provides that if a transfer was made in discharge of marital obligations, the proper basis in the property is the fair market value on the date of the transfer pursuant to the divorce decree. Under this standard, Sheila Cook would be correct in using this basis when reporting the sale of

---

**1.** Although *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), was legislatively overruled by the enactment of Section 1041 of the Internal Revenue Code, 26 U.S.C. § 1041, *Davis* applies in this case since the effective date of the Cooks' divorce preceded the date the new law was enacted. Tax Reform Act of 1984, Pub.L. No. 98–369, § 421, 98 Stat. 494. Section 1041 now provides that no gain or loss is recognized on a transfer of property between spouses if the transfer is incident to the divorce. Section 1041(a)(2). Rather, the property is treated as if acquired by gift. Section 1041(b). Consequently, the basis acquired by the transferee in the property is the adjusted basis of the transferor. Section 1041(b)(2).

**2.** Only two of those properties are at issue here as it appears that Sheila still owns one property known as Doan's Point in Sorrento, Maine.

**3.** The Massachusetts Local Rule 18 statements attached by the parties to their cross-motions for summary judgment are entirely silent as to where Dr. Cook obtained the property which he transferred to Sheila Cook. Below before the district court and during oral argument on appeal, counsel for the appellee conceded the ownership facts we state above. Thus, we must ignore all statements made by the government in its brief concerning the property, except for these agreed-to facts.

the property on her tax returns. By contrast, if the transfer from Charles Cook to Sheila was not in discharge of marital obligations, then the transfer was a non-taxable event and the basis remains unchanged. Following this standard then, the government would be correct in asserting the deficiencies.

To determine whether the transfer was in discharge of marital obligations or a non-taxable event, we first must determine the ownership status of the property at the time of the divorce. *Id.*, at 68–71, 82 S.Ct. at 1192–94. If Sheila Cook and Charles Cook were co-owners of the property, then the transfer would not be in discharge of marital obligations. Thus, the government contends that Sheila and her ex-husband were in fact co-owners of the property and that Sheila's basis is lower than the fair market value of the property at the time of the transfer. *Id.* Sheila Cook argues, however, that she was not a co-owner and that the transfer to her of appreciated property incident to a divorce was a taxable event for her ex-husband.

■ The ownership question must be resolved under the law of the state where the transfer occurred, that is Connecticut. *See United States v. Mitchell*, 403 U.S. 190, 197, 91 S.Ct. 1763, 1768, 29 L.Ed.2d 406 (1971). The government argues that Connecticut is a *de facto* community property state for divorce purposes for two reasons. First, the government argues that the applicable Connecticut statute[4] includes among the fifteen factors for a divorce tribunal to consider in deciding whether to order property transferred, the amount of "contribution" of each party to their respective estates. Second, the government contends that the references in Connecticut

case law, *see Pasquariello v. Pasquariello*, 168 Conn. 579, 362 A.2d 835 (1975), to divorce orders transferring property as being "equitable" mean that the transferee spouse has had pre-existing equitable ownership interests in the property. The government argues that these equitable principles provided the basis for the decision of the divorce court judge in this case. Thus, the government contends that Sheila Cook had at least an equitable ownership interest in the property, and therefore was not entitled to use the basis of fair market value at the time of the transfer.

This is not the first time the government has attempted to collect a tax on the transfer at issue. *Cook v. Commissioner*, 80 T.C. 512 (1983), *aff'd*, 742 F.2d 1431 (2d Cir.1984), was a case between the government and Charles Cook. Sheila Cook was not a party. There, the government lost in its attempt to collect an alleged deficiency of $384,437 based primarily on the Commissioner's determination that the transfer of the stock and Maine properties during 1976 to Sheila Cook was a taxable event requiring recognition of gain to Charles. In the present case, the government relies on the holding and facts adduced in Charles Cook's litigation to ground its argument here. Testimony of the divorce court judge is at the crux of the government's argument.

When asked in *Cook v. Commissioner* whether he directed the transfer of the property in discharge of a marital obligation, the divorce court judge said:

> No, I wouldn't say that at all. I gave it back because I felt it was hers. All she had to do, really, was put him in a position where he felt like a rich man, well-to-do, and I was going to give her

---

4. Conn.Gen.Stat. §§ 46–51 (1976) (recodified at Gen.St.Rev. §§ 46b–81 (1979) states in relevant part:

> At the time of entering a decree annulling or dissolving a marriage or for legal separation ..., the superior court may assign to either the husband or wife all or any part of the estate of the other; and may pass title to real property, without any act on the part of either the husband or the wife to the other party.... In fixing the nature and value of the property, if any, to be so assigned, the court ..., shall

> consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.

back—I didn't want him to have what was rightfully hers.

The government contends that the divorce judge's testimony in *Cook v. Commissioner*, coupled with its interpretation of Conn. Gen.Stat. §§ 46–51 and case law, conclusively establishes that Sheila was a rightful owner of the property, and this was the reason that the property was returned to her.

Below, the government sought to introduce the above testimony of the divorce court judge in *Cook v. Commissioner*. The district court decided that this testimony was irrelevant and also noted that Sheila Cook was not a party to *Cook v. Commissioner*, was not able to cross-examine the divorce court judge, and had no right to intervene in her ex-husband's tax case. And the district court made clear its strong belief that *Cook v. Commissioner* was wrongly decided.

 We perceive no error. We review the district court's application of Rule 804(b)(5) under an abuse-of-discretion standard. *United States v. Zannino*, 895 F.2d 1, 7 (1st Cir.1990); *United States v. Rodríguez*, 706 F.2d 31, 41 (2d Cir.1983). Given the facts and conclusions cited above, the court acted within its discretion in excluding the proffer. The government, having lost *Cook v. Commissioner*, asked the district court, and now asks us, to compensate for its error by committing a second error: forcing Sheila Cook to pay a tax she is not legally obligated to pay. But no more here than elsewhere can two wrongs make a right.

 Under Connecticut law a spouse's interest in property held in the name of the other spouse does not amount to co-ownership. "[N]either husband nor wife shall acquire by the marriage any right to or property interest in any property held by the other before or acquired after such marriage." Conn.Gen.Stat. §§ 46–9. *See Davis*, 370 U.S. at 70, 82 S.Ct. at 1193. Furthermore, the stress the government

wishes to place on the fifteenth and last factor to be weighed in §§ 46–51 ignores case law denying "priority to any single criterion in determining a property division." *McPhee v. McPhee*, 186 Conn. 167, 172, 440 A.2d 274, 277 (1982). Conveyances of property from one spouse to another are presumed to be gifts. *Walter v. Home National Bank & Trust Co.*, 148 Conn. 635, 638, 173 A.2d 503 (1961).[5] In fact:

> the law seems clear: a federal capital gains tax will be incurred on a transfer of property between a husband and a wife pursuant to a divorce or legal separation unless local law holds that the wife had a vested interest in the property transferred similar to coownership as in a community property state. No such vested interest in the wife is recognized in Connecticut. Our law on that issue is quite similar to that of Delaware as discussed in the Davis case.... Thus under both our common law and by statute, a wife's share in her husband's estate pursuant to an award in the case of a divorce or legal separation is based upon a liability of the husband and not upon any property right of the wife such as coownership.

*Thomas v. Thomas*, 159 Conn. 477, 486–87, 271 A.2d 62, 66–67 (1970).

 Title to the properties at the time of the divorce lay solely in the hands of Charles Cook. This case involves no constructive or resulting trust which would have made Sheila Cook a co-owner at time of the transfer. No fraud is alleged and there is no evidence that Sheila or her family intended that Charles return their gifts upon termination of the marriage. *See Walter v. Home National Bank*, 148 Conn. 635, 173 A.2d 503 (1961). Sheila Cook cannot be charged with ownership or contribution of property which was legally and equitably held and later given or sold, by other members of her family. Charles Cook owned these properties outright and the fact that the stock was a gift from

---

5. The transfer from Dr. Charles Cook to Sheila was not a non-taxable division of property between spouses. Title to the property, as even the court in *Cook v. Commissioner* found, was in

Charles Cook. The Commissioner sought to collect a tax from him, but lost that case. Now a comparable tax from Sheila is sought here. *Id.* at 521. *See also* Conn.Gen.Stat. §§ 46–9.

Sheila's family or that some of the real estate was purchased from her family does not render his individuality merged with that of his wife or his wife's individuality with her family's.

Accordingly, we agree with the district court that the transfer was made in discharge of Charles Cook's marital obligation to Sheila Cook. It follows, under *Davis*, that because Sheila Cook was not a co-owner under Connecticut law that the property was necessarily transferred in discharge of Charles Cook's marital obligations. The transfer should have been a "taxable event" for him at the time of the divorce decree. Sheila Cook was correct in using the fair market value of the property at the time of transfer as her basis when she reported the subsequent sale of the property on her tax returns.

*Affirmed.*