**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GAVIN POLONE,

*Petitioner,*

v.

COMMISSIONER OF INTERNAL
REVENUE,

*Respondent.*

No. 04-72672

Tax Ct. No.
12665-00

ORDER AND
OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
April 6, 2006—Pasadena, California

Filed October 11, 2007

Before: Jerome Farris and Sidney R. Thomas, Circuit Judges,
and George Schiavelli,* District Judge.

Opinion by Judge Thomas

---

*The Honorable George Schiavelli, United States District Judge for the
Central District of California, sitting by designation.

13781

## COUNSEL

James M. Harris, Edwin L. Norris, Jonathan M. Brenner, Sidley Austin Brown & Wood LLP, for appellant Gavin Polone.

Bridget M. Rowan, Kenneth L. Greene, Eileen J. O'Connor, United States Department of Justice, for appellee Commissioner of the Internal Revenue Service.

## ORDER

The opinion filed March 12, 2007, is withdrawn and a substituted opinion is filed concurrently with this order.

With the filing of the opinion, the panel has voted to deny the petition for rehearing. Judge Thomas voted to reject the suggestion for rehearing en banc and Judges Farris and Schiavelli so recommend.

The full court has been advised of the suggestion for rehearing en banc, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed. R. App. P. 35(b).

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

No further petitions for rehearing or petitions for rehearing en banc shall be filed or entertained in this case.

The motion to modify opinion is denied as moot.

## OPINION

THOMAS, Circuit Judge:

This appeal presents the question of whether payments received after the effective date of amendments to 26 U.S.C. § 104(a)(2) based on a defamation settlement agreement executed prior to the effective date can be excluded from gross income. We conclude that the amendments apply to payments received after the effective date of the amendment, and we affirm the judgment of the Tax Court.

I

Gavin Polone worked as a talent agent at United Talent Agency ("UTA") from 1989 until April 21, 1996, when he was fired. After terminating Polone, UTA spoke with various entertainment industry trade publications, and made statements about Polone's termination. Specifically, UTA alleged that Polone was terminated for "inappropriate behavior."

Polone hired counsel, and sent UTA a demand letter on April 22, 1996. The letter alleged that UTA had made defamatory statements about Polone, and requested that UTA "cease and desist from making further defamatory statements." On April 24, 1996, Polone filed a complaint in the Los Angeles County Superior Court alleging, among other things, wrongful termination and defamation. Polone and UTA settled both claims on May 3, 1996.

Polone received $2 million as settlement of the wrongful termination claim, which is not at issue in this case. As part of the settlement of the defamation claim, UTA issued a press release retracting its previous statements about Polone's ter-

mination, and paid Polone $4 million. The $4 million was paid in four installments of $1 million, which Polone received on May 3, 1996; November 11, 1996; May 5, 1997; and November 11, 1998.

Polone, a cash basis taxpayer, did not include the May 1996 payment on his 1996 federal income tax return. He included the November 1996 payment, but later filed an amended 1996 return seeking a refund. He did not pay taxes on the May 1997 or November 1998 payments. Polone justified his failure to pay taxes on this income on our decision in *Warren Jones Co. v. Comm'r*, 524 F.2d 788 (9th Cir. 1975), alleging that *Warren Jones Co.* required him "to treat his receipt of his former employer's promise to pay $4 million as an amount realized in the 1996 taxable year at the time of his receipt of the promise to pay."

In September 2000, the IRS sent Polone a deficiency notice for his failure to pay taxes on the settlement payments he received in May 1996, May 1997, and November 1998. Polone petitioned for review in the Tax Court in December 2000. He also filed an amended petition in August 2002, claiming that the IRS should have reduced his 1996 taxable income by $1 million because he had erroneously paid taxes on the November 1996 settlement payment. The Tax Court held that Polone owed taxes on the May 1997 and November 1998 settlement payments, and that the taxes he paid on the November 1996 settlement payment were proper. *Polone v. Comm'r*, T.C. Memo 2003-339 (2003). The Tax Court also held that Polone did not owe any taxes on the May 1996 settlement payment. *Id.* He appeals.

II

[1] Section 61(a) of the Tax Code defines "gross income" as "all income from whatever source derived." 26 U.S.C. § 61(a). Thus, subject to certain exemptions, which are to be construed narrowly, § 61(a) applies to all income, including

settlement payments. *Comm'r v. Schleier*, 515 U.S. 323, 328 (1995) ("the default rule of statutory interpretation [is] that exclusions from income must be narrowly construed." (quotations omitted)); *Comm'r v. Glenshaw Glass*, 348 U.S. 426, 431 (1955) ("The mere fact that payments were extracted from the wrongdoers as punishment for unlawful conduct can not detract from their character as taxable income to the recipients.").

In May 1996, when Polone and UTA settled, 26 U.S.C. § 104 exempted "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness" from a taxpayer's gross income. 26 U.S.C. § 104(a)(2) (1995). The term "personal injuries" in § 104 had been interpreted to include damages from settlements of defamation claims. *Roemer v. Comm'r*, 716 F.2d 693, 700 (9th Cir. 1983).

**[2]** Congress amended § 104 in August 1996 so that it exempted "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or periodic payments) on account of personal *physical* injuries or *physical* sickness." 26 U.S.C. § 104(a)(1) (1996) (emphasis added). The amendment legislatively overruled court decisions, like *Roemer*, that had exempted awards for nonphysical injuries from a taxpayer's gross income. *See* H.R. Conf. Rep. 104-737 at 301 ("Thus, the exclusion from gross income does not apply to any damages received . . . based on a claim of . . . injury to reputation."). The effective date of the amendments was August 20, 1996, but there was an exception to the amendment for "amount[s] received under a written binding agreement, court decree, or mediation award in effect on (or issued before) September 13, 1995." 26 U.S.C. § 104, Application of August 20, 1996 Amendments.

Here, the Tax Court held that pre-amendment § 104 applied to Polone's May 1996 payment from UTA, but that post-

amendment § 104 applied to the November 1996, May 1997, and November 1998 payments because Polone received those payments after the amendment's effective date. *Polone*, T.C. Memo 2003-339 at 66. As a result, it held that the May 1996 payment was tax exempt, but that the other payments were not. *Id.* at 68. Polone argues that the pre-amendment § 104 applies to all four settlement payments he received, and thus that the $4 million in its entirety is tax exempt. Whether the May 1996 version of § 104 or the amended version of § 104 governs the settlement payments that Polone received after the amendment's effective date is a question of statutory interpretation that we review de novo. *Leslie v. Comm'r*, 146 F.3d 643, 648 (9th Cir. 1998).

**[3]** Applying the plain language of § 104, the Tax Court properly held that the November 1996, May 1997, and November 1998 payments were taxable. The amended statute applies to any damages *received* after its effective date of August 20, 1996, unless the parties had contracted prior to September 13, 1995. P.L. 104-188, Title I, Subtitle F, Part 1, § 1605(d).[1] Although Polone settled his claims with UTA in May 1996, he did not actually *receive* the three payments in question until well after the effective date of the amendments to § 104. Because the settlement was not in effect before September 13, 1995, it was not subject to the exception to amended § 104 for preexisting settlement agreements. Thus, the amended version of § 104 applies to the payments Polone received in November 1996, May 1997, and November 1998, and the Tax Court properly sustained the IRS's deficiency notice.

### III

Polone, citing our decision in *Warren Jones Co.*, argues that under 26 U.S.C. § 1001, which explains how to calculate

---

[1]September 13, 1995 was the date upon which Congress first proposed to amend § 104. H.R. 2491 (104th Cong., 1995).

taxable gain from the "sale or other disposition of property," his entire settlement of $4 million was realized on May 3, 1996, the date of settlement, even though UTA paid him in installments. Therefore, he argues, pre-amendment § 104 applies to the entire $4 million he received from UTA. The application of § 1001 to Polone's settlement with UTA is a question of statutory interpretation that we review de novo. *Leslie*, 146 F.3d at 648.

[4] A straightforward reading of § 104 — and a broader inquiry into the system of taxation under this section — counsels against Polone's novel proposal to import § 1001 to the structured settlement context. Section 1001 provides that the "gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis." 26 U.S.C. § 1001(a). It is true that, as a general matter, a legal claim can be considered property for purposes of § 1001. *See, e.g.*, *United States v. Stonehill*, 83 F.3d 1156, 1159 (9th Cir. 1996). But § 104 specifically refers to "amounts received," and not "amounts realized" — a critical distinction in deciding whether to treat structured settlements as dispositions of property. 26 U.S.C. § 104. Indeed, we have yet to find a case has treated structured settlements taxed under § 104 as dispositions of property and not as ordinary income received. The cases cited by Polone for this proposition are plainly inapposite. *See Herbert's Estate v. Comm'r*, 138 F.2d 756 (3d Cir. 1943) (satisfaction of debt by debtor considered a "disposition"; however, taxed year received, not year obligation created); *United States v. Davis*, 370 U.S. 65 (1962) (transfer of property in compliance with divorce settlement agreement treated as a disposition of property, rendering the transaction a taxable event); *Cook v. United States*, 904 F.2d 107 (1st Cir. 1990) (same); *Reynolds v. Comm'r*, 77 T.C.M. 1479 (1999) (same). These divorce settlements determined that divorce transactions were taxable events in the first instance; the cases were later legislatively overruled by enactment of section 1041 of the Internal Revenue Code, 26 U.S.C. § 1041. *Cook*, 904 F.2d at 109 n.1. Such holdings are

irrelevant to structured settlements taxed under § 104, which clearly contemplates that payments be taxed the year in which they are received.

**[5]** *Warren Jones Co.* does require a taxpayer to report the amount realized the year property is disposed of under § 1001; however, for the reasons just explained, there is no reason to apply § 1001 to personal injury settlements in the first place. We should also note that decisions of the Tax Court support this conclusion. *See, e.g.*, *Alexander v. Comm'r*, 69 T.C.M. (CCH) 1792 (1995); *Nahey v. Comm'r*, 111 T.C. 256 (1998).

**[6]** Were we to adopt Polone's interpretation of the tax code, payees of structured settlements would be forced to pay taxes on the full prospective amount of the settlement on the date of the settlement, sometimes years before receiving that amount. This would subvert congressional policy to encourage structured settlement as opposed to lump-sum schemes. *See* Staff of Joint Comm. on Taxation, 106th Cong., Tax Treatment of Structured Settlement Arrangements (Comm. Print 1999) (available at http://www.house.gov/jct/x-15-99.htm). Moreover, in order to alleviate this burdensome result, we would have no choice but to also import the opt-out provision available for income received from installment sales, 26 U.S.C. § 453(d). *Cf. Warren Jones Co.*, 524 F.3d at 792-93 (determining that Congress enacted the opt-out provision to alleviate the "hardships" associated with reporting an installment sale as the full fair market value of the property, received on the date contracted). We have found no congressional support for such overreaching. Congressional intent is clear: structured settlements are to be taxed as payments are received.

IV

Polone also argues that pre-amendment § 104 should apply to the settlement payments he received in November 1996,

May 1997, and November 1998 because applying amended § 104 to those payments would amount to retroactive legislation in violation of his Fifth Amendment due process rights.[2] We review this constitutional claim de novo. *Quarty v. United States*, 170 F.3d 961, 965 (9th Cir. 1999).

**[7]** Retroactive legislation runs the risk of offending the Due Process Clause of the Fifth Amendment, *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), and the Supreme Court has provided various formulas for determining whether a particular statute applies retroactively. For example, the Court has considered whether a statute "takes away or impairs vested rights acquired under existing laws," *id.* at 269 (quoting *Society for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756 (CC NH 1814)), or whether a law "changes the legal consequences of acts completed before its effective date," *id.* at 269 n.23 (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)).

**[8]** The thrust of the various tests is that to operate retroactively, a statute must actually "attach[ ] new legal consequences" to completed, past conduct. *Id.* at 270. It is not enough that a statute "is applied in a case arising from conduct antedating the statute's enactment," or that a statute "upsets expectations based in prior law." *Id.* at 269-270. Thus, for example, even though "a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property," a change in the property tax regime would not be considered retroactive with respect to all who had purchased property prior to the effective date of the amendment. *See id.* at 270 n.24.

---

[2]We do not address whether amended § 104(a)(2) violates the Sixteenth Amendment of the Constitution, as Polone failed to raise the issue on appeal. The power of Congress to tax income is provided in the Sixteenth Amendment: "The Congress shall have power to law and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

**[9]** Applying this test to § 104, we hold that amended § 104 was constitutionally applied to the payments Polone received in November 1996, May 1997, and November 1998. As explained above, the amendment to § 104 explicitly applied only to amounts received after its effective date, which was August 20, 1996. 26 U.S.C. § 104, Application of August 20, 1996 Amendments. Although it is possible for a statute with a seemingly prospective application to apply retroactively in some circumstances, *Landgraf*, 511 U.S. at 258-59, the amendments to § 104 did not because they did not attach new legal consequences to completed payments. On the contrary, the amendments applied only prospectively, to payments made after their date of enactment. *Compare with Untermeyer v. Anderson*, 276 U.S. 440, 445 (1928) (a tax was retroactive where it applied to "bona fide gifts not made in anticipation of death and *fully consummated* prior to" the statute's effective date) (emphasis added); *Blodgett v. Holden*, 275 U.S. 142, 147 (1927) (same).

**[10]** Polone argues that the amendments to § 104 apply retroactively because his settlement with UTA was "finalized on May 3, 1996, more than three months *before* the enactment of the statute." This argument is unconvincing for two reasons. First, although the settlement contract may have been "finalized" in the sense that both parties signed it, settlement of Polone's defamation claim was nowhere near complete as of August 20, 1996. On the contrary, UTA still had to make three payments to Polone, and he had to honor his promise to guard UTA's confidential information. Thus, the Tax Court did not apply amended § 104 to a contract that was "fully consummated" prior to the amendment's effective date, as was the case in *Untermeyer* and *Blodgett*. Rather, amended § 104 was applied to a contract whose fulfillment was still a work in progress. Second, Polone's argument falls squarely into the Supreme Court's warning that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf*, 511 U.S. at 269. The fact that Polone's tax dispute stemmed

from his settlement with UTA — conduct that antedated the revisions to § 104 — does not mean that § 104 operates retrospectively when it is applied to settlement payments that Polone received after its effective date.

V

For the reasons explained above, we agree with the Tax Court that the settlement payments received by Polone after August, 1996 are taxable as ordinary income.

**AFFIRMED.**