# United States Tax Court

T.C. Memo. 2023-99

ADAM SOWARDS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 2133-17L.                          Filed August 3, 2023.

————

*Christopher L. Bourell*, Grace Borell (student), and Ariel Berger (student), for petitioner.

*Emly B. Berndt*, *John D. Davis*, and *Nancy P. Klingshirn*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, *Judge*: Pursuant to sections 6320(c)[1] and 6330(d)(1), petitioner seeks review of the determination of the Internal Revenue Service (IRS) Office of Appeals[2] sustaining a proposed levy and the filing of a notice of federal tax lien (NFTL) to collect federal income tax due for the 2008, 2009, and 2010 taxable years (years at issue). The issues for decision are whether (1) respondent properly disallowed certain credits that petitioner claimed on his original and amended federal income tax

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] On July 1, 2019, the Office of Appeals was renamed the Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). We will use the name in effect at the times relevant to this case, i.e., the Office of Appeals or Appeals.

**[\*2]** returns for each of the years at issue; (2) respondent should be equitably estopped from maintaining that petitioner is not entitled to those credits; (3) respondent's disallowance of the credits on the basis of a statutory amendment postdating the filing of petitioner's original income tax returns deprives petitioner of his right to due process under the Fifth Amendment to the Constitution; and (4) petitioner's conscientious objection to participation in the Social Security system excuses him from providing Social Security numbers (SSNs) to substantiate his claims for credits.

FINDINGS OF FACT[3]

Some of the facts are stipulated and are so found. The Stipulations of Facts and the Exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Michigan when he timely filed his Petition.

In October 2011, sometime before the 15th of that month, petitioner and his spouse jointly filed federal income tax returns for the years at issue. Petitioner claimed four children as his dependents for each of those years. In addition, the 2008 return claimed the additional child tax credit (ACTC) with respect to petitioner's four children, along with the earned income tax credit (EITC) and the recovery rebate credit. The 2009 return claimed the ACTC with respect to petitioner's four children, along with the EITC. The 2010 return claimed the child tax

---

[3] Respondent objects to the proposed findings of fact set forth in petitioner's Opening Brief on the ground that they do not comply with Rule 151(e)(3). Under Rule 151(e)(3), a party's opening brief must include proposed findings of fact in the form of numbered statements referring to the pages of the transcript, exhibits, or other sources relied upon to support the statements, which may not consist of recitals of testimony, nor of discussion or argument relating to the evidence or the law. We agree that petitioner's proposed findings of fact fail to comply with Rule 151(e)(3), and we have accordingly not relied on them in making our own findings except to the extent respondent has expressly declined to object to certain of petitioner's proposals. *See, e.g.*, *Ashkouri v. Commissioner*, T.C. Memo. 2019-95, at \*23–24.

In addition, because petitioner's Answering Brief does not set forth any objections to respondent's proposed findings of fact, we conclude that petitioner concedes the correctness of respondent's proposals except to the extent that they are clearly inconsistent with his own. *See Jonson v. Commissioner*, 118 T.C. 106, 108 n.4 (2002), *aff'd*, 353 F.3d 1181 (10th Cir. 2003). Our findings of fact are accordingly based on our examination of the parties' Stipulations of Facts, the stipulated Exhibits, the trial transcript, those portions of respondent's proposed findings of fact that we have determined to be consistent therewith, and those portions of petitioner's proposed findings of fact to which respondent does not expressly object.

[*3] credit (CTC) with respect to petitioner's four children.[4] The returns did not provide SSNs for petitioner's children or his spouse, none of whom had SSNs when the returns were filed.

Petitioner's spouse (whom he married in 2003) did not have an SSN because she was not a citizen of the United States. Petitioner also had not obtained SSNs for his children because he had intended (consistent with his religious beliefs, which include conscientious objection to public insurance and reliance on government benefits) to allow his children to decide at an appropriate age whether they wished to participate in the Social Security system. To obtain taxpayer identification numbers other than SSNs for his children, petitioner mailed requests for individual taxpayer identification numbers (ITINs)[5] to respondent along with his 2010 return. Respondent never formally acted on petitioner's requests for ITINs.

Shortly after petitioner filed his returns, respondent notified him that his claims for the CTC, the ACTC, and the EITC for the years at issue would be disallowed as mathematical or clerical errors. *See* § 6213(b)(1), (g)(2). Respondent thereafter assessed the adjusted tax due, statutory interest, and additions to tax for failure to timely pay the tax due for each year at issue. Respondent also assessed additions to

---

[4] The parties' stipulations concerning the credits claimed for each of the years at issue on petitioner's original returns do not accurately reflect the claims made on those returns. Although petitioner's returns for 2008 and 2009 included claims for only the ACTC, the parties' stipulations state that petitioner claimed the CTC for 2008 and both the CTC and the ACTC for 2009. Also, for 2009, the parties have stipulated that petitioner claimed credits on his original return in amounts that do not match those shown on the return.

These discrepancies are immaterial. As discussed *infra* Part II.A, under the circumstances of this case petitioner's eligibility for either the CTC or the ACTC (which is the refundable portion of the CTC) is determined by the same statutory provisions relating to taxpayer identification numbers. Because we conclude herein that all of petitioner's claims for the CTC, the ACTC, and the EITC are disallowed, the precise amounts of those credits claimed on his returns (as originally filed or as later amended) do not affect the outcome of this case. To the extent that petitioner's returns and the parties' stipulations refer to the credits at issue by different names, we will use the names reflected on petitioner's returns.

[5] An ITIN is a taxpayer identification number issued by the IRS to an individual who is not a citizen or national of the United States. Treas. Reg. § 301.6109-1(d)(3)(i). The IRS will not issue an ITIN to an individual who has, or is entitled to have, an SSN. *Id.* subpara. (4)(i).

[*4] tax for failure to timely file returns for 2008 and 2009,[6] as well as an addition to tax for failure to pay estimated tax due for 2010.

During the years following the disallowance of petitioner's claims for credits, petitioner and respondent continued to communicate about his returns and his requests for ITINs. In 2013 respondent sent petitioner a letter in connection with an inquiry he had made in 2012 concerning the status of his ITIN requests, which stated that respondent had made a correction relating to an SSN on petitioner's 2008 return.

Respondent subsequently stopped collection activity and placed petitioner's accounts for the years at issue in currently not collectible status (although petitioner had not requested that respondent do so). Eventually, in 2016, respondent resumed collection activity by sending petitioner and his spouse a notice of intent to levy (levy notice) and a notice of NFTL filing (lien notice) to collect petitioner's outstanding tax liabilities for the years at issue. After receiving the levy notice and the lien notice, petitioner timely requested a collection due process (CDP) hearing pursuant to sections 6320 and 6330.[7]

An Appeals settlement officer conducted the CDP hearing. During the hearing the settlement officer informed petitioner that his claims for the disallowed credits were required by statute to include SSNs. Petitioner accordingly applied for and obtained SSNs for each of his children. Before petitioner provided the SSNs to respondent, however, Appeals issued him a notice of determination. The notice of determination sustained the proposed levy and the filing of the NFTL, noting that petitioner had not submitted the SSNs or the necessary information for consideration of a collection alternative.

Petitioner timely petitioned for review of Appeals' determination.[8] Petitioner thereafter in 2017 submitted amended returns to respondent for each of the years at issue, which listed his

---

[6] Petitioner's account transcript for 2010 does not include an assessment of a late-filing addition to tax for that year but instead indicates that petitioner had obtained an extension of time until October 15, 2011, to file that return.

[7] Petitioner's spouse was not named on, and did not sign, the request for a CDP hearing.

[8] Both petitioner and his spouse signed the Petition; but because petitioner's spouse had not requested a CDP hearing and consequently had not received a notice of determination, we dismissed this case for lack of jurisdiction to the extent that the Petition purported to seek review of a determination concerning petitioner's spouse.

**[\*5]** children's SSNs.[9] After a partial trial, respondent moved the Court to remand the case to Appeals for a supplemental CDP hearing to give further consideration to petitioner's underlying tax liabilities. The Motion was granted.[10]

In connection with the supplemental hearing, petitioner's underlying liabilities for the years at issue were considered by Appeals, in consultation with the Examination Division. An Appeals officer concluded that petitioner was entitled to dependency exemptions with respect to his children but not to the EITC or recovery rebate credit because no valid taxpayer identification number for his spouse had been provided, as required by sections 32(m) and 6428, respectively. The Appeals officer further concluded that petitioner was not eligible for the CTC and the ACTC because section 24(e), as amended and in effect when petitioner filed his amended returns, disallowed any claim for such credits with respect to a child whose taxpayer identification number had not been issued before the due date for filing the relevant return. Finally, the Appeals officer concluded that petitioner had not demonstrated that he was entitled to abatement of the assessed statutory interest or additions to tax for any of the years at issue.

Another Appeals officer considered the collection issues besides the underlying liabilities and concluded that (1) all requirements of applicable law and administrative procedure had been satisfied; (2) petitioner had not provided any information necessary for consideration of a collection alternative, and his counsel had expressly declined during the supplemental hearing to request a collection alternative or provide financial information; and (3) in the absence of a collection alternative, the collection actions at issue appropriately balanced the need for efficient tax collection against the intrusiveness of the collection actions. Also adopting the conclusions of the other Appeals officers concerning petitioner's underlying liabilities, the Appeals officer

---

[9] Petitioner's amended returns for 2008 and 2009, like his original returns for those years, claimed the ACTC and the EITC (although the amended return for 2009 slightly increased the amount of his claim for the EITC compared to the original return). Petitioner's amended return for 2010 reduced the amount reported as his adjusted gross income for that year, reduced the amount of his claim for the CTC, and added a claim for the ACTC. The amended return for 2010 also adjusted petitioner's claims for dependency exemptions.

[10] Respondent conceded at the partial trial that petitioner was entitled to contest the underlying liabilities. Respondent's position is correct. *See Triola v. Commissioner*, T.C. Memo. 2014-166; *Internal Revenue Manual* 21.5.4.2(9) (Sept. 6, 2017); *see also Perkins v. Commissioner*, 129 T.C. 58, 65 n.8 (2007).

**[\*6]** issued a supplemental notice of determination reflecting the foregoing and sustaining the proposed levy and the filing of the NFTL.[11]

OPINION

I.  *Administrative Hearing and Judicial Review*

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer after a demand for payment of tax has been made and the taxpayer has failed to pay. The lien arises when the tax is assessed. § 6322. The Secretary generally must file an NFTL with certain state or local authorities where a taxpayer's property is situated for the lien to be valid against certain categories of third parties. § 6323(a), (f); *Behling v. Commissioner*, 118 T.C. 572, 575 (2002). The Secretary is required to notify the taxpayer in writing of the filing of an NFTL and of the taxpayer's right to a hearing concerning the NFTL filing. § 6320(a)(1), (3).

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer who fails to pay the tax within 10 days after notice and demand for payment is made. Before doing so, however, the Secretary must give the taxpayer written notice of his or her right to a prelevy hearing. § 6330(a)(1), (b)(1).

During a CDP hearing a taxpayer may raise "any relevant issue," such as a challenge to the appropriateness of the collection action and the possibility of collection alternatives. §§ 6320(c), 6330(c)(2)(A). A taxpayer may also challenge the existence of the underlying tax liability, but only if the taxpayer did not receive a notice of deficiency with respect to the liability or otherwise have an opportunity to dispute it. §§ 6320(c), 6330(c)(2)(B). The Appeals officer who conducts the hearing must then determine whether to uphold the collection action, taking into consideration (1) whether the requirements of applicable law and administrative procedure have been met, (2) any relevant issues raised by the taxpayer, and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's legitimate concerns that the collection action be no more intrusive than necessary. § 6330(c)(3).

---

[11] The supplemental notice of determination indicates that because petitioner's claims for dependency exemptions had been allowed, respondent had partially abated petitioner's assessed liabilities for 2008 and 2009, and that his assessed liability for 2010 would also be partially abated.

**[\*7]**  Pursuant to sections 6320(c) and 6330(d)(1), this Court has jurisdiction to review the Appeals officer's determination.  When this Court remands a case to the Appeals Office and there is a supplemental determination, we review the supplemental determination.  *Hoyle v. Commissioner*, 136 T.C. 463, 468 (2011), *supplementing* 131 T.C. 197 (2008).  If the validity of the underlying tax liability is properly at issue, we review the liability determination de novo.  *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000).  We review the administrative determination concerning a proposed collection action for abuse of discretion.  *Id.* at 182.  An abuse of discretion occurs if an Appeals officer issues a determination "arbitrarily, capriciously, or without sound basis in fact or law."  *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999).

II.  *Underlying Tax Liabilities*

On brief petitioner disputes Appeals' determination only to the extent that he contends Appeals erroneously disallowed his claims for the CTC, the ACTC, and the EITC.  He has abandoned all other issues, including any challenge to the underlying liabilities relating to his claim for the recovery rebate credit or his liability for statutory interest and additions to tax (to the extent that Appeals determined that the assessments of those items should not be abated), and any claim that Appeals' resolution of nonliability issues constitutes an abuse of discretion.  *See* Rule 151(e)(4) and (5).

Credits are a matter of legislative grace, and a taxpayer must prove entitlement to the credits claimed.[12]  *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *see also* Rule 142(a).

A.  *CTC and ACTC*

A taxpayer may claim the CTC for an individual who is a "qualifying child" as defined in section 152(c) and who has not attained age 17 during the taxable year.  § 24(a), (c).  A portion of that credit (commonly referred to as the ACTC) is refundable.  § 24(d).  Petitioner claimed the ACTC for 2008 and 2009, as well as the CTC (and later, also the ACTC) for 2010.

In 2011 when petitioner filed his original returns for the years at issue, section 24(e) provided: "No credit shall be allowed under this section to a taxpayer with respect to any qualifying child unless the

---

[12] Petitioner does not contend that the burden of proof with respect to factual issues should shift to respondent under section 7491(a).

[*8] taxpayer includes the name and taxpayer identification number of such qualifying child on the return of tax for the taxable year." Because petitioner's original returns did not include taxpayer identification numbers for his children, he did not initially make an allowable claim for the CTC or the ACTC for any of the years at issue.

Petitioner attempted to rectify the omission of the taxpayer identification numbers by obtaining SSNs for his children and then submitting amended returns including the SSNs. By the time he submitted the amended returns to respondent in 2017, Congress had amended section 24(e) to impose additional identification requirements. *See* Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. Q, § 205(a) and (b), 129 Stat. 2242, 3081 (2015). As amended, section 24(e) provided as follows:

> Sec. 24(e). Identification requirements.—
>     (1) Qualifying child identification requirement.—No credit shall be allowed under this section to a taxpayer with respect to any qualifying child unless the taxpayer includes the name and taxpayer identification number of such qualifying child on the return of tax for the taxable year and such taxpayer identification number was issued on or before the due date for filing such return.
>     (2) Taxpayer identification requirement.—No credit shall be allowed under this section if the identifying[13] number of the taxpayer was issued after the due date for filing the return for the taxable year.

Division Q, the Protecting Americans from Tax Hikes Act of 2015 (PATH Act), made the additional identification requirements applicable to "any return of tax, and any amendment or supplement to any return of tax, which is filed after the date of the enactment of this Act," which was December 18, 2015. PATH Act § 205(c)(1), 129 Stat. at 3081.[14] We

---

[13] Congress later replaced the word "identifying" with the words "taxpayer identification." *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. U, § 101(i)(1), 132 Stat. 348, 1162. The version of section 24(e) as amended by the PATH Act otherwise remains in effect (although a special SSN requirement applies for taxable years 2018 through 2025). *See* § 24(h)(7).

[14] Congress later amended section 205(c) of the PATH Act to eliminate an exception for timely filed returns for the 2015 taxable year. *See* Consolidated Appropriations Act, 2018, § 101(i)(2), 132 Stat. at 1162. That amendment has no impact on returns (or amendments or supplements thereto) for the taxable years at issue in this case.

**[\*9]** have previously noted that "[a]fter the due date of the original return, an amended return constitutes a supplement or amendment to the original [return]." *Clayton v. Commissioner*, T.C. Memo. 1997-327, 74 T.C.M. (CCH) 146, 150 (citing *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934)), *aff'd*, 181 F.3d 79 (1st Cir. 1998).

Petitioner did not submit the amended returns listing SSNs for his children until 2017, well after the date of the PATH Act's 2015 enactment.[15] The amended returns are consequently subject to the additional identification requirements imposed by the PATH Act.

Because petitioner's children did not yet have taxpayer identification numbers in 2011—when he filed his original returns for 2008, 2009, and 2010—and petitioner did not obtain SSNs for them until after respondent began collection activity in 2016, it follows that the children's SSNs were not issued until after the due dates for filing income tax returns for the years at issue. *See* § 6072(a) (providing that a calendar year taxpayer's income tax return is generally due on April 15 of the following year); § 6081(a) (providing that the time for filing a return generally may not be extended by more than six months). The

---

[15] To the extent that petitioner can be understood to contend that the additional identification requirements should not apply to his claims for credits because he filed his original returns before the effective date of the PATH Act, we interpret that contention not as an argument that the amended returns are something other than amendments or supplements to the original returns, but rather as an argument that the amendments should relate back to the filing of the original returns. That argument is not persuasive. Although the general rule is that an amendment or supplement to a return relates back to the filing of the original return, *see Zellerbach Paper Co. v. Helvering*, 293 U.S. at 180, that rule does not apply for all purposes. For example, an amendment to a return is not effective to avoid the application of a longer assessment limitations period resulting from fraud or a substantial understatement on the original return, or to prevent the accrual of interest on an underpayment. *See Badaracco v. Commissioner*, 464 U.S. 386, 393–94 (1984). The PATH Act's amendments to section 24(e) can thus be understood as effectively limiting the general rule that an amendment relates back to the filing of an original return in cases where the amendment corrects the omission of a taxpayer identification number.

We are also unmoved by petitioner's claim that he did not "change or amend any material information such as income earned, number of dependents, or the amount of credits claimed." The materiality of a particular item is not dispositive of whether an amended return or other document constitutes an amendment or supplement to an original return. *See, e.g.*, *Friedman v. Commissioner*, 97 T.C. 606, 610 (1991) (focusing analysis of a document's relationship to the original return on whether it was "intended to modify" the return). In any event the taxpayer identification numbers involved here are material to petitioner's claims for credits in that they are required by statute for allowance of the credits.

**[\*10]** SSNs provided by petitioner's amended returns do not satisfy the section 24(e)(1) identification number requirements in effect when he submitted them, and therefore his claims for the CTC and the ACTC are disallowed.

B.   *EITC*

Section 32(a)(1) allows an eligible individual to claim the EITC to offset that individual's tax liability, subject to a phaseout explained in section 32(a)(2).  As we have noted, petitioner claimed the EITC for both 2008 and 2009.  At all times relevant to this case, section 32 imposed the following identification number requirement with respect to individuals otherwise eligible to claim the EITC:

> Sec. 32(c).   Definitions and special rules.—For purposes of this section—
>> (1) Eligible individual.—
>> . . . .
>>> (E)   Identification number requirement.—No credit shall be allowed under this section to an eligible individual who does not include on the return of tax for the taxable year—
>>>> (i) such individual's taxpayer identification number, and
>>>> (ii) if the individual is married (within the meaning of section 7703),[16] the taxpayer identification number of such individual's spouse.

The only type of taxpayer identification number that satisfies this requirement is an SSN.  § 32(m).[17]  It is undisputed that petitioner was married throughout 2008 and 2009.   It is also undisputed that

---

[16] After petitioner filed his original and amended returns, Congress amended section 32 by deleting "(within the meaning of section 7703)" from section 32(c)(1)(E)(ii) and inserting rules for determining marital status in section 32(d).  *See* American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 9623(a) and (b), 135 Stat. 4, 153–54.  The section 32(c)(1)(E) identification number requirement otherwise remains in effect.

[17] The PATH Act amended section 32(m) to require that the SSN must have been issued on or before the due date for filing the relevant return.  *See* PATH Act § 204(a), 129 Stat. at 3081.  That amendment does not affect the outcome of this case because petitioner's spouse did not have an SSN before or after the due dates of petitioner's 2008 and 2009 returns.

**[\*11]** petitioner's spouse did not have an SSN and was not eligible to obtain one when petitioner filed his original and amended returns for 2008 and 2009. Those returns, as originally filed or as amended, thus could not have included the required identification number for petitioner's spouse. Petitioner's claims for the EITC therefore must be disallowed.

C. *Petitioner's Equitable Estoppel, Due Process, and Conscientious Objection Arguments*

Petitioner contends that the additional identification requirements imposed by the PATH Act should not bar his claims for the CTC and the ACTC[18] because respondent should be equitably estopped from applying the PATH Act's additional identification requirements. Petitioner also contends retroactively disallowing his claims for credits on the basis of the PATH Act's modification of section 24(e) is a deprivation of his right to due process under the Fifth Amendment. Alternatively, petitioner suggests that the identification number requirements applicable to the CTC, the ACTC, and the EITC may burden impermissibly the free exercise of his religious beliefs in view of his conscientious objection to participation in the Social Security system. Petitioner's contentions are unpersuasive.

1. *Equitable Estoppel*

To avoid disallowance of his claims for the CTC and the ACTC in accordance with the PATH Act's amendments to section 24(e), petitioner argues that respondent should be equitably estopped from applying the amended version of section 24(e) to his claims for credits. In support of that argument, petitioner contends that respondent improperly delayed the resolution of his claims for credits by failing to act on his requests for ITINs during the four-year period between the submission of those requests and the enactment of the PATH Act, and by unilaterally postponing collection activity (and the corresponding opportunity for judicial review) until after the PATH Act was enacted.

Equitable estoppel is applied against the Commissioner only "with utmost caution and restraint." *Estate of Emerson*

---

[18] Petitioner makes similar arguments with respect to the EITC. As we pointed out *supra* note 17, however, the PATH Act's amendment of section 32(m) does not affect petitioner's eligibility for the EITC under the circumstances of this case. We accordingly do not address petitioner's arguments concerning the PATH Act in relation to the EITC.

**[\*12]** *v. Commissioner*, 67 T.C. 612, 617 (1977).  For estoppel to apply against the Commissioner, we have held that a taxpayer must establish the following elements:

> (1) [a] false representation or wrongful, misleading silence by the party against whom the estoppel is claimed; (2) an error in a statement of fact and not in an opinion or statement of law; (3) the taxpayer's ignorance of the truth; (4) the taxpayer's reasonable reliance on the acts or statements of the one against whom estoppel is claimed; and (5) adverse effects suffered by the taxpayer from the acts or statements of the one against whom estoppel is claimed.

*Wilkins v. Commissioner*, 120 T.C. 109, 112 (2003); *see also Estate of Emerson*, 67 T.C. at 617–18.

The U.S. Court of Appeals for the Sixth Circuit, to which any appeal in this case presumptively lies, *see* § 7482(b)(1)(G)(i), requires a party invoking estoppel against the government to establish similar elements, and additionally requires that the party "must demonstrate some 'affirmative misconduct' by the government in addition to the other estoppel elements," *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004) (quoting *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001)); *see also United States v. Guy*, 978 F.2d 934, 937 (6th Cir. 1992).

The Sixth Circuit has explained that affirmative misconduct in this context means "more than mere negligence," in that the party asserting estoppel must show "an act by the government that either intentionally or recklessly misleads the claimant." *Mich. Express*, 374 F.3d at 427.  Consequently, "[t]he party asserting estoppel against the government bears the burden of proving an intentional act by an agent of the government and the agent's requisite intent." *Id.*

There is no dispute that when petitioner filed his original returns in 2011, he also requested that the IRS issue ITINs for his children.[19]

---

[19] Although petitioner testified that he requested an ITIN (rendered as "I-10" in the transcript) for his spouse, in addition to requesting ITINs for his children, we need not address any request relating to petitioner's spouse.  As we have discussed, petitioner's claims for the CTC and the ACTC must be disallowed because his children's SSNs were issued after the due dates of the returns for the years at issue, and his claims for the EITC must be disallowed because his spouse did not have an

**[\*13]** Petitioner credibly testified that although he did not communicate with the IRS in writing about his ITIN requests, he confirmed with the IRS by telephone that those requests had been received.[20] He further testified that he understood from his conversations with IRS personnel that ITINs would be issued for his dependents once his requests had been properly investigated. But petitioner was unable to identify any specific IRS employee with whom he discussed his ITIN requests before discussing them with the settlement officer at the original CDP hearing, and the record is otherwise devoid of evidence concerning petitioner's prehearing communications with the IRS and the IRS's handling of his ITIN requests.

This evidence does not establish the traditional elements of estoppel, nor does it establish that respondent or his employees have engaged in affirmative misconduct. At most, the evidence suggests the possibility that an IRS employee could have indicated to petitioner that ITINs might be issued for his children if warranted by the results of the IRS's investigation. But the parties have since stipulated, consistent with Treasury Regulation § 301.6109-1(d)(4)(i), that petitioner's children were not eligible to receive ITINs because, as citizens of the United States, they were eligible to obtain SSNs. Any suggestion by an IRS employee to the effect that respondent might (or even affirmatively would) issue ITINs for petitioner's children would thus amount to nothing more than a misstatement of the law, which cannot give rise to an estoppel. *See, e.g.*, *Trugman v. Commissioner*, 138 T.C. 390, 394 (2012) ("We have recognized . . . that incorrect legal advice from an IRS employee does not have the force of law and cannot bind the Commissioner or this Court.").

Nor can an estoppel result from respondent's failure to act on petitioner's ITIN requests before the enactment of the PATH Act. Petitioner has not identified any specific government agent who communicated with him concerning the ITIN requests or who was otherwise responsible for reviewing them. The record is consequently devoid of evidence concerning any such agent's intent in providing advice to petitioner or in failing to act upon his ITIN requests. Absent

---

SSN, which is the only type of taxpayer identification number permitted under section 32(m). Accordingly, none of the credits at issue could have been allowed even if respondent had issued an ITIN to petitioner's spouse.

[20] This testimony is corroborated by the IRS's 2013 letter to petitioner, which the parties have stipulated was issued in connection with an inquiry that petitioner made about the status of his ITIN requests.

**[\*14]** such evidence, we cannot conclude that the delay in acting on those requests amounted to anything more than mere negligence (at worst), which does not rise to the level of affirmative misconduct necessary to establish an estoppel.

For similar reasons, no estoppel can result from petitioner's claim that respondent improperly delayed the commencement of collection activity. Although the evidence does indicate that respondent deferred the commencement of collection activity, even though petitioner did not request that he do so, there is no evidence (and petitioner does not contend) that any IRS employee misled him with respect to the commencement of collection activity in any way that could establish the basic elements of estoppel. Moreover, there is no evidence that such deferral resulted from affirmative misconduct on the part of any specific IRS employee. Petitioner has accordingly failed to demonstrate that estoppel should apply against respondent in this case.

2.    *Due Process*

Petitioner also argues that the PATH Act retroactively disallows his claims for the CTC and the ACTC, without notice, in violation of the Due Process Clause of the Fifth Amendment to the Constitution.

We reject petitioner's view that the PATH Act's amendments to section 24(e) have retroactive effect as applied here. "[T]o operate retroactively, a statute must actually 'attach[] new legal consequences' to completed, past conduct." *Polone v. Commissioner*, 505 F.3d 966, 972 (9th Cir. 2007) (second alteration in original) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)), *aff'g* T.C. Memo. 2003-339. A statute does not have retroactive effect, however, if it merely "'is applied in a case arising from conduct antedating the statute's enactment,' or . . . 'upsets expectations based in prior law.'" *Id.* (quoting *Landgraf*, 511 U.S. at 269–70); *see also Patel v. Gonzales*, 432 F.3d 685, 690 (6th Cir. 2005).

As we have already discussed, the PATH Act's amendments to the section 24(e) identification number requirements expressly apply to returns, and amendments and supplements to returns, filed after the date of its enactment. *See* PATH Act § 205(c)(1), 129 Stat. at 3081. Thus, by its terms, the amended version of section 24(e) applies only prospectively, to documents (like petitioner's amended returns) filed after enactment of the PATH Act. "Although it is possible for a statute with a seemingly prospective application to apply retroactively in some

**[\*15]** circumstances," *see Polone v. Commissioner*, 505 F.3d at 972, the amended version of section 24(e) does not do so because it does not change the legal consequences of petitioner's original returns, which were filed before the PATH Act's enactment.

As filed, those returns did not include sufficient information to make allowable claims for the CTC or the ACTC under section 24. And because petitioner cannot satisfy the post-PATH Act section 24(e) identification number requirements, he in effect cannot now correct his legally insufficient prior claims.[21] The result, under the circumstances of this case, is that the amended version of section 24(e) merely locks in the preexisting (and expected) legal consequences of the original returns. Petitioner's contention that the PATH Act operates retroactively is consequently without merit.

We accordingly conclude that the application of section 24(e), as amended by the PATH Act, to petitioner's amended returns does not deprive him of his right to due process under the Fifth Amendment.

### 3.   *Conscientious Objection*

Finally, petitioner notes on brief his conscientious objection to participation in the Social Security system, which we understand as a suggestion that the taxpayer identification number requirements at issue in this case may impermissibly burden the free exercise of his religious beliefs. A taxpayer's religious or moral beliefs do not excuse a failure to comply with identification number requirements established by statute and regulation. *See Miller v. Commissioner*, 114 T.C. 511, 516–18 (2000).

Accordingly, because petitioner's claims for credits fail to satisfy the applicable statutory provisions concerning taxpayer identification numbers, they must be disallowed notwithstanding his conscientious objection to participation in the Social Security system.

### III.   *Conclusion*

We reject petitioner's challenges to his underlying tax liabilities for the years at issue. Since he has otherwise abandoned any challenge

---

[21] As we observed *supra* note 15, the PATH Act can be understood to modify the general rule that an amendment or supplement relates back to the filing of the original return in cases where the amendment consists of a taxpayer identification number.

**[\*16]** to Appeals' determination to sustain the collection actions, we will sustain that determination, as supplemented.

To reflect the foregoing,

*Decision will be entered for respondent.*